## UNION CENT. LIFE INS. CO. v. BERLIN.

### (Circuit Court of Appeals, Sixth Circuit. May 8, 1900.)

### No. 755.

LIFE INSURANCE—ACTION ON POLICY—WAIVER OF FORFEITURE.

The holder of a life insurance policy had given notes for the first year's premium, the first maturing May 15th and the second July 15th. Both notes and policy provided that on failure to pay any note at maturity the policy should lapse. On the maturity of the first note the solicitor through whom the policy was procured agreed with the insured to pay it personally as an accommodation. A few days before the maturity of the second the solicitor called on the insured, and stated the necessity of meeting it at maturity, but offered, if payment of one-half the first note was made, to renew the second on behalf of the company, on being furnished a health certificate from one of the company's physicians. It was understood that this would be done, but the insured was then ill, and continued so until his death July 29th; nothing further having been done in regard to the premiums. *Held*, that there was nothing in the transactions between the solicitor and the insured which could have misled the latter by inducing the belief that his policy would remain in force after the second note became past due, or to warrant the submission to the jury, in an action on the policy in which such facts appeared without contradiction, of the question of the estoppel of the company to insist upon the forfeiture.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

This case was before this court on writ of error at a former term. Insurance Co. v. Berlin, 33 C. C. A. 274, 90 Fed. 779. The statement of the case as there made may for convenience be repeated here, correcting a single error as to the date when the first premium note became due, which was May 15, 1895, instead of February 15. The statement of the case was as follows:

"This suit was upon a policy of life insurance issued by appellant on the life of Charles L. Berlin, of Memphis, Tenn., payable to his wife, the appellee. The trial resulted in a judgment against appellant, and to review that judgment this writ of error is prosecuted. The policy was dated February 11, 1895, and the annual premium was $129.75. As a substitute for cash payment of the first year's premium, four notes were executed by the assured, Berlin, payable to appellant. The first note was due May 15, 1895, and the second July 15, 1895. One of the conditions of the policy was as follows: 'The failure to pay, if living, any of the first three annual premiums, or the failure to pay any notes, or interest upon notes, given to the company for any premium, on or before the days upon which they become due, shall avoid and nullify this policy without action on the part of the company or notice to the insured or beneficiary; and all payments made upon this policy shall be deemed earned as premiums during its currency. Any and all notes, with their conditions, which may be given for premiums or loans upon the security of this policy, are hereby made a part of this contract of insurance.' The notes contained the following provision: 'Said policy, including all conditions therein for surrender or continuance as a paid-up term policy, shall, without notice to any party or parties interested therein, be null and void on the failure to pay this note at maturity, with interest at 6 per cent. per annum, payable annually.

101 F.—43

In case this note is not paid at maturity, the full amount of premium shall be considered earned as premium during its currency, and the note payable, without reviving the policy or any of its provisions.' Recovery in the court below was resisted upon the ground that the policy became forfeited by the nonpayment of the second note, falling due July 15, 1895. Berlin died on the 29th of July, 1895. C. E. Tucker was the general agent of appellant at Memphis, and J. B. Marmon was a solicitor and collector employed by Tucker. Marmon was a personal friend of Berlin, and induced him to apply for and take the policy of insurance sued on. When the note representing the first installment of the annual premium became due, May 15, 1895, Berlin was unable to meet it, and Marmon agreed with him to take care of or pay the note for him, and the amount of the note was charged to Marmon against the sum then due him for work, and was paid as between Berlin and the company, and this became a debt due from Berlin to Marmon personally. On the 6th of July, before maturity of the second note, and on the 15th, Marmon called on Berlin, and agreed with him to renew the second note, provided Berlin would pay him one-half of the first note, which had been assumed and paid by Marmon; it being understood, as Marmon says, that Berlin would have to be in good health, or furnish a health certificate, indorsed by one of the company's medical examiners. Berlin was, at the time of this interview, sick, though the illness was not thought to be serious. Berlin was to be at his office the day following the 6th, at which time he expected to pay Marmon the amount required in order to secure a renewal of the second note, and it appears that he had procured the money necessary to make that payment, and came to the office the next day, but remained only a short time, returning home before Marmon saw him. Marmon says he impressed Berlin with the importance of paying the amount required in order to renew the second note. After failing to see Berlin on the 7th of July, according to appointment, Marmon says he inquired about Berlin from time to time, and, being informed that he was getting along very well, he did not care to be too exacting, and let the matter stand, expecting to see Berlin every day until the day of Berlin's death, on the 29th. On the 29th day of July, Heckle, Berlin's brother-in-law, having ascertained that the second note had not been paid, called to see Mr. Tucker, the general agent, and, finding him absent from the city, tendered the amount of the second note to Marmon, which Marmon declined to receive. This was about 11 o'clock, and about seven hours before the death of Berlin thereafter, on the same day."

The judgment was reversed and the cause remanded, with a direction to grant a new trial. A second trial of the case resulted in a verdict against the defendant for $5,528.55, on which judgment was duly entered, and to review that judgment this writ of error was sued out. On the second trial the evidence contained in the record of the first trial was again introduced, with only the addition of a single letter from Marmon to Tucker, which in no wise materially affects or changes the case. At the close of the whole evidence the court refused, on defendant's motion, to direct a verdict in its favor, and submitted the case to the jury on issues defined by the court as follows:

"There are now just two issues for you to determine in the case, gentlemen of the jury: (1) Did Marmon, by such conduct in the premises as would mislead a reasonably prudent man under the given circumstances, induce Berlin to believe that he had extended or would extend payment of the note falling due July 15, 1895, so that he did not pay it? Was that the real cause of the nonpayment? (2) Had the defendant company, by its course of dealings with Berlin and other policy holders, through Tucker and Marmon, its Memphis agents, induced Berlin to believe that Marmon had the authority to extend payment of the note falling due July 15, 1895? If you answer both these questions in the affirmative, your verdict should be for the plaintiff for the amount of the policy and interest."

The entire evidence in relation to these issues, and on which the verdict and judgment rest, is contained in certain letters of the insurance solicitor, Marmon, which we set out just as found in the record:

"Exhibit J.

"No. 270 Front St., Memphis, Tenn.   July 26, 1895.

"Mr. John M. Pattison, Pres. Union Central Life Ins. Co., Cincinnati, Ohio—Dear Sir:  Your telegram of yesterday to Mr. Tucker for several reasons did not reach me until this afternoon.  I am glad to state, however, that the delay has done no damage.  In regard to the past-due notes on parties not in good health, and of which Mr. Yowell, of Arkansas, so promptly advised you, will say that the person in question is Charles L. Berlin, who has been sick for some time with bilious fever.  I called at Mr. Berlin's office some time since to collect his note, and found that he was sick.  I went then to his house, and found that he had a bilious attack; nothing more.  I insisted then that he pay his insurance promptly, telling him that if he should become dangerously sick that we could not keep his insurance in force with a past-due note, etc. He was confident that he would be able to go to his office the next morning, and would then pay it, and did come to the office, and was there a short while; but the exertion was too great for him, and he had to return home, a sicker man than he was at first.  I had no idea, as I stated to Mr. Yowell, of taking a settlement on the policy, even in his present condition, without a certificate from either Dr. Saunders or Dr. Peete, stating that he was out of danger.  I am glad to say, however, that he (Berlin) is convalescing, and will soon be all right, and will settle the note in the regular way.  Assuring you that I shall always endeavor to guard the interest of the U. C., as well as do justice to policy holders who favor me with their business, I am, very resp.,
"J. B. Marmon."

"July 31, 1895.

"E. P. Marshall, Secretary Union Central Life Ins. Co., Cincinnati, Ohio—Dear Sir:  Inclosed you will please find particulars as nearly as I can get them of the death of Mr. Berlin.  I hold two notes of Mr. Berlin's.  When the first note fell due, I told Mr. Berlin that I would see it paid the company in order to keep his insurance in force, and he understood that the company was satisfied as to the first note.  I also assured Mr. Tucker that the note would be paid.  Before the second note fell due I called on Mr. Berlin, as I have before stated, and sought to impress him with the importance of paying the amount, and agreeing that if he would pay a part of the note that I would renew the other for him, which he said that he would be able to do the next day.  I do not remember the date, but he did come to his office the next day, but remained only a short time, returning home before I got to see him.  I inquired about him from time to time at his office, and was informed that he was getting along nicely and would be up in a short time, and, not wishing to be too exacting with him, I let the matter stand as it was, thinking each day that I would see him.  I had a talk with his brother-in-law this morning, and, of course, he wants the insurance paid.  I told him that I would inform him as fast as I was advised by you, and to do nothing until I received some instructions in the matter, which he agrees to do.  Awaiting your reply and instructions, I am, very truly yours,         J. B. Marmon.
"(Dictated.)"

"Exhibit E.

"Memphis. Tenn., August 2, 1895.

"Mr. E. P. Marshall, Secretary Union Central Life Ins. Co., Cincinnati, Ohio—Dear Sir:  Yours of the 1st inst. just received.  I am sorry that you misconstrued the meaning of my letter when I stated that 'I told Mr. Berlin that I would pay the company his first note.'  I meant that I owed the company thirty-two and 45-100 dollars, and, when the report was made to the company that the check for that note would be remitted, I did nothing in the name of the company, and if Mr. Berlin had asked me for the company's note, and had given me his individual note, I would have surrendered it to him without a

word, for I understood that I was responsible for the amount of the note. As to the second note, I cannot see how you could possibly understand that I had made or offered to make an extension on it. I had been instructed by Mr. Tucker to renew the second note if he (Berlin) would pay the first note. Mr. Pattison says in his letter to me that it is proper for an agent to say to a policy holder that he can get his paper renewed if he can pay all of the note. I said this to Mr. Berlin, and even went further, and tried to impress him with the fact that if he did not fix the note in some way when due that I could not keep his insurance in force any longer. I told Mr. Yowell, the Arkansas watchdog of the treasury, the same when he was here."

"Exhibit J.

"Memphis, Tenn., Aug. 3, 1895.

"Mr. E. P. Marshall, Secretary Union Central Life Ins. Co., Cincinnati, Ohio— Dear Sir: Yours of the 1st inst. received late yesterday evening. I am sorry that you misconstrued the meaning of my letter in regard to the first note of Mr. Charles L. Berlin. I can but reiterate what I stated in my letter of the 31st ult., namely, 'that I told Mr. Berlin, when his first note was due, that I had settled with the company and his insurance was in force. I also assured Mr. Tucker that the note would be paid,'—and had Mr. Tucker made his report the note would have been reported paid. I called on Mr. Berlin some days before his second note was due, and agreed to renew it, provided he would pay me a part of the first note, which he assured me he would do as soon as he came to his office. It was not my purpose to disobey instructions in not sending the notes as instructed. I fully intended to come to Cincinnati at once, and bring the notes with me, but found it impossible to leave, so sent the notes as instructed as soon as I found that I could not leave. Hoping that this will be sufficiently explicit for you to understand my exact position in the matter, and again assuring you that I shall endeavor to protect the interest of the company, and at the same time be loyal to those who have kindly favored me with their business, I am, very truly yours,      J. B. Marmon.

"Mr. Tucker will return about the 8th.   J. B. M."

"Received August 5, 1895.   The Union Central Life Ins. Co."

"Exhibit J.

"No. 370 Front St., Memphis, Tenn., Aug. 14, 1895.

"Mr. Jno. M. Pattison, Pres. Union Central Life Ins. Co., Cincinnati, Ohio —Dear Sir: Mr. Tucker has just returned, and wishes me to write you now while the matter is fresh in my mind all the facts about the Berlin notes. I think my former letters aver the matter fully, but I will go over the whole transaction again as fully as possible. When the Berlin note, dated February 15, 1895, and due May 15, 1895, was due, Mr. Berlin stated to me that one Mr. Gilchrist, a real-estate agent, had sold some property that he was interested in and had not turned over to him (Berlin) his (Berlin's) part of the commissions, and though he had made repeated efforts to collect from Gilchrist, had failed, and had no other money he could pay the note with. He requested, as a personal favor of me, to protect his insurance, which I consented to do, and told Mr. Tucker at once that I would assume this note. I did not pay the money to Mr. Tucker, because I had money to my credit with him. Mr. Tucker considered the note paid as far as Berlin was concerned, and would have reported it paid to the company, as I have said before, if he could have gotten off his report before he left on his summer trip. I called to see Mr. Berlin on July 6th, and told him that I would renew the second note, provided that he would pay me one-half of the first note, understanding, of course, that he would have to be in good health, or furnish a health certificate, indorsed by one of our medical examiners. When I assumed the first note, I did not give it to Mr. Berlin, but held it instead of a personal obligation, as I have frequently done before, but would have exchanged it for his personal obligation if he had so desired. He, Mr. Tucker, and myself understood that the note was settled, so far as he (Berlin) and the company were concerned. When I received your telegram requesting me to send both notes, while I did not consider that the first note belonged to the company, I wished to comply strictly with instructions, so sent them both as instructed. Berlin had drawn

the money from his employer to pay the one-half of the first note, and, had I gone to his house, I would have gotten the money; but, as I have said before, I did not care to be too exacting of him, hence carelessly let the matter stand, expecting to see him every day. When I called to see Mr. Berlin on July 6th, he was not confined all the time to his bed, and, when I was shown in, he sat out in the hall and talked with me for some time. He was confident that he would be at his office the next day, and then we could arrange the insurance. I regret exceedingly that this should have occurred, but feel that I have done nothing to compromise the company. It is especially unfortunate, for the public are so suspicious about insurance companies, and competing agents are so prone to use anything of the kind against us,—in fact, it has already been intimated by some that the U. C. has a contested claim against them,—that, should the Berlin policy not be paid, I fear that it will very materially injure our business here. Hoping that this will be sufficiently explicit, I am, very respt.,                                                                    J. B. Marmon."

Exception was duly taken to the court's refusal to give a peremptory instruction in favor of the defendant; also to the denial of a special instruction requested, and to certain parts of the charge; and error is assigned accordingly.

Robert Ramsey and F. M. Thompson, for plaintiff in error.

Wm. M. Randolph, for defendant in error.

Before LURTON and DAY, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after stating the case, delivered the opinion of the court.

The question presented by the motion to direct a verdict for defendant, and by the assignment of error to the ruling of the court on the motion, is whether, upon the evidence disclosed in the letters of Marmon, the assured, Berlin, as a man of ordinary intelligence and prudence, was or could have been misled or induced to believe that the premium note falling due July 15, 1895, had been or would be extended, by reason of what had occurred between him and Marmon, without anything further on Berlin's part. Having stated the evidence at length, it would seem to require no particular discussion to show that no reasonable or just view which could be taken of this evidence would justify the conclusion that the insured was misled, or misunderstood the effect of a failure to pay the July installment of premium according to the very plain terms of the contract. The parties having made certain terms conditions on which the contract was to continue or to terminate, the contract as thus made must be enforced, unless performance was waived by the insurer. Imperial Fire Ins. Co. v. Coos Co., 151 U. S. 452, 14 Sup. Ct. 379, 38 L. Ed. 231; Insurance Co. v. Rosenfield, 37 C. C. A. 99, 95 Fed. 358. All dealings in relation to the policy after its delivery to Berlin are found in what occurred in regard to the premium notes maturing May 15th and July 15th. The assumption of the first note was not on behalf of the company, but the individual undertaking of Marmon, affecting the relation between him and Berlin only. Such negotiations as took place in respect of the second (or July) note could only impress upon a reasonably intelligent, prudent person the importance of prompt payment of this installment of premium, and the danger of nonpayment. The understood necessity for a medical certificate of good health or

freedom from dangerous illness in order to renew the second note, with continued sickness from July 7th, furnishes a probable explanation of the failure by Berlin to take any further action after that date. But, be this as it may, the suggestion that he was misled as to the effect of what had taken place is wholly without support in the evidence. We conclude; therefore, that the facts furnish no foundation for the claim that forfeiture of the policy for breach of the condition requiring prompt payment of the premium was waived, and that it could not be reasonably inferred from the facts that Berlin was misled in this respect. Under such circumstances there was error in the court's refusal, on motion, to withdraw the case from the jury.

This view, being conclusive of the case as presented by the record, renders it unnecessary to consider other assignments of error. Reversed and remanded, with a direction to set aside the verdict and grant a new trial.