## IMPERIAL FIRE INSURANCE COMPANY *v.* COOS COUNTY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEW HAMPSHIRE.

No. 204. Submitted January 17, 1894. — Decided January 29, 1894.

A policy of fire insurance containing a provision that it should become void if without notice to the company and its permission endorsed thereon "mechanics are employed in building, altering, or repairing" the insured premises, becomes void by the employment of mechanics in so building, altering, or repairing; and the insurer is not responsible to the assured for damage and injury to the assured premises thereafter by fire, although not happening in consequence of the alterations and repairs.

THIS was an action of assumpsit upon a five thousand dollar policy of insurance issued by the plaintiff in error November 21, 1882, insuring the court-house of the defendant in error at Lancaster, in the county of Coos, New Hampshire, against loss by fire, for a period of five years, from the date of the policy.

The premises insured were a two-story building, having on the first floor the offices of register of deeds and probate, clerk of court, and county commissioners. The court-room was on the second floor. At the date of the policy there were two brick vaults, one, 8 by 13 feet, for the use of the probate office, and the other, 16 by 13 feet, for the use of the offices of the register of deeds and clerk of court, there being a partition in the centre separating the part used by the register from that used by the clerk.

The fire which destroyed the insured premises occurred about two o'clock in the morning of November 4, 1886.

The policy in suit contains the following: "Payment in case of loss is upon the following terms and conditions."

Among the terms and conditions are the following:

"This policy shall be void and of no effect if, without notice to this company and permission therefor in writing endorsed hereon, . . . the premises shall be used or occupied so as to increase the risk . . . or the risk be increased . . . by any means within the knowledge or control of the assured, . . . or if mechanics are employed in building, altering, or repairing premises named herein, except in dwelling-houses, where not exceeding five days in one year are allowed for repairs."

In August, 1886, the plaintiff, without the written consent of the defendant and without its knowledge, employed wood carpenters and brick masons, and reconstructed and enlarged the vaults, making that of the office of the register of probate 12 by 13 feet instead of 8 by 13 feet, as it was at the date of the policy, and making those of the offices of the register of deeds and clerk of court 22 by 13 instead of 16 by 13 feet, as at the date of the policy. The foundations were also reconstructed and enlarged to correspond with the enlargement of the vaults. The reconstruction and enlargement of the vaults necessitated the cutting of the floors and ceilings of the respective offices in which they were, so as to extend the vaults.

The time during which these mechanics were employed in the reconstruction and enlargement of the foundations and vaults was about five or six weeks. Some painting was also done incident to the above changes, but the extent did not distinctly appear.

In addition to the foregoing the plaintiff below also changed the method of heating the offices of the register of probate and clerk of court, placing a hot-water coil in the furnace in the basement, from which ran pipes through the floors and were attached to radiators in those offices. This work was commenced November 2, and completed about midnight,

November 3, 1886. No permission to make this change in the method of heating was either obtained or requested, and the defendant had no knowledge of its being done. In the evening of November 3 a fire was built in the furnace to test the heating apparatus, and heat the radiators so they might be bronzed, and the fire was left burning at about midnight, when the mechanics and some of the county officers left the building.

From the time work began upon the vaults, early in August, until the fire, the papers and records of the offices of the clerk of court and registers of probate and deeds were in the court room or in the respective offices, unprotected by any safes or vaults.

The expense of the labor and raw material of the foregoing alterations was about $3000.

The defendant contended that the foregoing alterations, rebuilding, and repairs were extraordinary and not ordinary repairs, such as were necessary in the use of the premises insured, and such as might have been contemplated by the parties when the contract was made, and the following request for a ruling was made to the presiding judge, viz. :

"The defendants request the court to rule that the building, altering, and repairing of the premises to the extent of tearing down several partitions, cutting away a portion of the floors in several rooms, tearing down the vault and enlarging and rebuilding it, and the changing the method of heating a portion of its building by putting in piping and radiators for hot water or steam — all at the expense of several thousand dollars, for the labor of mechanics, for raw materials — was a building, altering, or repairing of the premises which increased the risk, and the policy thereby became void."

The court declined to rule as requested, and the defendant excepted.

Upon the conclusion of the testimony, which proved the foregoing facts, the defendant made the following motion that a verdict be directed, viz. :

"The defendants move that a verdict be directed for them on the ground that there is no evidence competent to be sub-

mitted to the jury that the building, altering, and repairing shown by the evidence was not such building, altering, and repairing as avoided the policy."

The motion was denied by the court, and the defendant excepted.

The defendant requested the court to instruct the jury —

"That if the work done by the mechanics, as disclosed by the evidence, increased the hazard while such work was being done, then the plaintiff is not entitled to recover."

The court refused to give this instruction, and the defendant excepted.

The court in the course of its charge to the jury instructed them as follows:

"The identical question before you is whether at the time the fire took place what the county of Coos had done in the way of alterations and repairs increased the risk at that time — that is, at the time of the fire — that is, on the night of November 4 — that the county of Coos had done in the way of repairs, changing the vaults, putting in additional heating apparatus — did those things increase the risk at that particular time? Not whether mechanics two days previously or three days previously or a week previously had worked in that building. What was the condition of the building on the night of the fire? Had what the county of Coos did in making those repairs increased the risk or had it not? Were the repairs ordinary or necessary and accompanied by no increase of risk, or were they of such an extraordinary and material character upon that particular night — that is, the condition in which the building was upon that particular night — that the risk was increased, and therefore the assured, the county, violated this condition in the policy, and consequently the defendant company should not be held liable?"

To this instruction the defendant excepted. There was a verdict and judgment for the plaintiff below for the sum of $5505, and this writ of error was prosecuted to reverse that judgment.

*Mr. Harry Bingham* for plaintiff in error.

*Mr. S. R. Bond* and *Mr. Fletcher Ladd* for defendant in error.

The finding of the jury establishes the fact that the risk was not increased by the alterations and repairs beyond what it was when the policy was first executed. This was a question of fact, which the court below properly left to the jury to determine. *Rice* v. *Tower*, 1 Gray, 426; *Cornish* v. *Farm Buildings Fire Ins. Co.*, 74 N. Y. 295. The question upon which the case turns is therefore this: did the repairs and alterations made by the defendant in error upon its courthouse, though not resulting in an increase of risk, though completed at the time when the fire occurred, and though not in any way the cause of the fire, nevertheless have the effect of avoiding the policy, under the condition therein contained declaring that "this policy shall be void and of no effect, if without notice to the company and permission therefor in writing endorsed hereon . . . mechanics are employed in building, altering, or repairing the premises named herein?"

The court will not stick in the letter of this condition, if by so doing the unmistakable general purpose of the contract is defeated. This principle of construction, which is of general application, has peculiar force as applied to contracts of insurance, which are construed liberally in favor of the insured. *Crovsillat* v. *Ball*, 3 Yeates, 375; *Insurance Companies* v. *Wright*, 1 Wall. 456, 468; *National Bank* v. *Ins. Co.*, 95 U. S. 673, 679; *Harper* v. *Albany Mut. Ins. Co.*, 17 N. Y. 194, 198. The loss not having been occasioned by the making of the alterations and repairs, and the risk not having been permanently increased by them, it would be a purely technical construction of the condition in question which should give it the effect of depriving the defendant in error of the indemnity for which it contracted, and for which it has paid the consideration required from it by the company.

*James* v. *Lycoming Ins. Co.*, 4 Cliff. 272, 276, 278, 280, 283, 284, is a direct adjudication upon facts similar in every respect to those in the case at bar. In that case a new boiler had

been put into a steam mill, and other extensive changes and repairs had been made on the premises, and in an action on the policy the company defended under a condition identical with that upon which the plaintiff in error relies here. In an exhaustive opinion by Clifford, J., the conclusion is reached that the condition in question, fairly construed, did not prohibit the making of reasonable and necessary changes and repairs, and that what had been done upon the insured premises came within that category. In the course of the opinion he says: "Attempt is made in argument to maintain that the structure erected to cover the projecting end of the new boiler, and the fireplace, and the man who feeds the boiler, is a greater change in the premises than the law of insurance will allow; but the agreed statement affords a complete and decisive answer to that suggestion, as it shows that the change made did not increase the risk, and that the structure erected was reasonable, necessary, and proper for the purpose. . . . Whether regarded as a condition subsequent, or as a mere promissory warranty, the condition in question, it is clear, is not one where a literal compliance with its terms is required. Such a construction would be absurd, as it would render the policy void if the insured employed a mechanic to take out a broken slate and put in a new one, or to replace a broken pane of glass, or to stop a leak in a chandelier, or other gas fixture, or in a cistern, or to mend a defective chimney, stove-pipe or furnace. . . . Such a condition, however, must receive a reasonable construction in view of the agreed facts in the case, and that construction must be one not repugnant to the nature and purpose of the contract, nor one inconsistent with the due and customary use and enjoyment of the property. . . . Insurable property is intended for use, and it is not the intent of a policy of insurance to impair the right of use nor to deprive the owner of the customary enjoyment of the property. . . . But the effect of that concession [that small repairs may be made] is to admit that the condition in question is subject to a reasonable construction not repugnant to the nature and purpose of the contract, nor inconsistent with the due and customary use and enjoyment of the property." Other author-

ities to the same general effect are: *Franklin Fire Ins. Co.* v. *Chicago Ice Co.*, 36 Maryland, 102; *Kern* v. *South St. Louis Mut. Ins. Co.*, 40 Missouri, 19.

The case of *London & Liverpool Fire Insurance Co.* v. *Crunk*, 91 Tennessee, 376, presents an instance where an insurance company sought to escape liability for a loss, under a condition which, if construed literally, had taken effect to avoid the policy. The condition was as follows: "If the building, or any part thereof, fall, except as the result of fire, all insurance by such policy on such building or its contents, shall immediately cease." The building had been struck by a cyclone, and the roof of the two front upper rooms and a part of the walls blown away. The court below charged the jury as follows: "The exclusion clause in question is not to be literally understood, so as to avoid the policy if an atom, or some minute portion of the material in the insured building, should fall. It means some functional portion of the structure, the falling of which would destroy its distinctive character as such. So that, if the proof in this case shows that the roof was blown from a part of one of the buildings mentioned in the policy sued on, and one of the upper rooms was uncovered and one of the walls thereof partially blown away, but leaving more than three-fourths of the building intact, and suitable for a dwelling-house, and that in this condition it was burned, the clause in the policy as to the falling of the building, or any part thereof, would not exempt defendant from liability, if otherwise liable, as before explained, unless you should believe from the proof that the falling was the direct cause of the fire. If the proof shows that the fire was scattered on the floor in one of the rooms of one of the insured houses by the wind; that some of it ignited the carpet and some of the furniture in the room, and a strong wind blew the roof and a portion of the building upon it, and after smoldering a time it broke out and consumed the building; that the wind, and not the falling building, or a part thereof, caused the fire; that the fire and not the falling of the building, was the proximate and direct cause of the loss, you should find for the plaintiff, if defendant is otherwise liable, as before explained."

In the court above on error these instructions were held correct, and Snodgrass, J., speaking for the whole court said: "The circuit judge drew the correct distinction. The falling of 'any part' of a building in such a contract manifestly could not apply to any minute or fragmentary portion, as it might literally import. If so, the clause would be void as unreasonable, and defeating, without merit, the contract for indemnity. It cannot have such a technical or literal construction. Literalism being disregarded, the clause must have a fair and reasonable interpretation and construction, and that which is most favorable to indemnity — the object of the contract. Not having a literal meaning, and not definitely designating what material part of the building must fall before the fire to exempt the insurer from liability, it must, like all ambiguous clauses, be construed most favorably to indemnity, and against the insurer. It should therefore not have been construed as meaning any fragment or portion of a part of the building, but an integral part of the entire building, as was done by the circuit judge."

The very recent case of *First Congregational Church* v. *Holyoke Fire Insurance Co.*, 158 Mass., 475, is another instance in which the court read into a condition very similar to that here in question a qualification imperatively demanded by common sense and common justice, but unwarranted by any express language contained in the policy. There the policy sued on provided that "this policy shall be void if . . . without the assent in writing or in print of the company . . . the situation or circumstances affecting the risk shall, by or with the knowledge, advice, agency, or consent of the insured, be so altered as to cause an increase of such risk; or if camphene, benzine, naphtha, or other chemical oils or burning fluids shall be kept or used by the insured on the premises insured, except that what is known as refined petroleum, kerosene, or coal oil may be used for lighting," etc. The property insured was a church edifice built of wood. A painter used a naphtha torch for several weeks to burn off the old paint on the building preparatory to repainting it, and finally the building caught fire where the torch had just been used, and was consumed. The report does not show precisely

how the questions discussed in the opinion were raised, but Knowlton, J., with the concurrence of the rest of the court, says on the point to which we here cite the case: "On the undisputed facts as stated in the bill of exceptions, the only ground on which the plaintiff could fairly ask to present a question to the jury is upon its contention that the use of naphtha and the change in conditions affecting the risk occurred through making ordinary repairs in a reasonable and proper way, and that in the provisions quoted from the policies there is an implied exception of what is done in making ordinary repairs. It is generally held that such provisions are not intended to prevent the making of necessary repairs, and the use of such means as are reasonably required for that purpose. *O'Niel* v. *Buffalo Insurance Co.*, 3 Comst. (3 N. Y.) 122; *Dobson* v. *Sotheby*, Mood. & Malk. 90; *Franklin Insurance Co.* v. *Chicago Ice Co.*, 36 Maryland, 102; *Billings* v. *Tolland County Insurance Co.*, 20 Connecticut, 139; *Mears* v. *Humboldt Insurance Co.*, 92 Penn. St. 15; *Williams* v. *New England Ins. Co.*, 31 Maine, 219; *Putnam* v. *Commonwealth Insurance Co.*, 18 Blatchford, 368. Both parties to a contract for insurance must be presumed to expect that the property will be preserved and kept in a proper condition by making repairs upon it. Policies on buildings are often issued for a term of five years or more. The making of ordinary repairs in a reasonable way may sometimes increase the risk more or less while the work is going on, or involve the use of an article whose use in a business carried on in the building is prohibited by the policy. In the absence of an express stipulation to that effect, a contract of insurance should not be held to forbid the making of ordinary repairs in a reasonably safe way, and provisions like these we are considering should not be deemed to apply to an increase of risk or to a use of an article necessary for the preservation of the property. We are therefore of opinion, that if the use of naphtha at the time and in the manner in which it was used was reasonable and proper in the repair of the building, having reference to the danger of fire as well as to other considerations, it would not render the policies void."

MR. JUSTICE JACKSON, after stating the case, delivered the opinion of the court.

In the view we take of the case it will be necessary to notice only the exceptions based upon the refusal of the court to instruct the jury, as requested by the defendant, " that if the work done by the mechanics, as disclosed by the evidence, increased the hazard while such work was being done, then the plaintiff is not entitled to recover; " and the exception to the instruction given, to the effect that the question was whether the work and repairs done upon the building increased the risk at the time of the fire.

It is contended on behalf of the plaintiff in error that these exceptions present the following legal propositions:

(1) The court should have instructed the jury that if the work done by the mechanics increased the hazard, while the work was in progress, then the assured would not be entitled to recover, because when the hazard was increased and the risk changed, by the acts of the assured, and without the knowledge or consent of the insurer, in that event the contract came to an end by virtue of its own expressed, unambiguous terms.

(2) The assured, the county of Coos, having made extensive repairs upon the insured premises, and having neither notified the plaintiff in error, the insurer thereof, nor obtained its consent in writing therefor, the conditions of the policy were violated, and, by its terms, the contract terminated.

(3) It was error to instruct the jury that it was immaterial what had occurred to increase the hazard during the repairs, unless such increased hazard existed at the time of the fire.

On behalf of the defendant in error it is claimed that under a proper construction of the policy, the question on which the case turns is, did the repairs and alterations, made by the defendant in error upon its court-house, and completed when the fire occurred, result in an increase of risk at that time, or were they in any way the cause of the fire? The proposition is that unless such repairs and alterations had the effect of either causing the fire, or of increasing the risk at the time it occurred,

then there was no breach of the condition, contained in the contract, that "this policy shall be void and of no effect, if, without notice to the .company, and permission therefor endorsed hereon, . . . mechanics are employed in building, altering, or repairing the premises named herein."

Contracts of insurance are contracts of indemnity upon the terms and conditions specified in the policy or policies, embodying the agreement of the parties. For a comparatively small consideration the insurer undertakes to guaranty the insured against loss or damage, upon the terms and conditions agreed upon, and upon no other, and when called upon to pay, in case of loss, the insurer, therefore, may justly insist upon the fulfilment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss. The terms of the policy constitute the measure of the insurer's liability, and in order to recover, the assured must show himself within those terms; and if it appears that the contract has been terminated by the violation on the part of the assured, of its conditions, then there can be no right of recovery. The compliance of the assured with the terms of the contract is a condition precedent to the right of recovery. If the assured has violated, or failed to perform the conditions of the contract, and such violation or want of performance has not been waived by the insurer, then the assured cannot recover. It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms, conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made.

It is settled, as laid down by this court in *Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287, that, when an insurance contract is so drawn as to be ambiguous, or to require interpretation, or to be fairly susceptible of two different constructions, so that reasonably intelligent men on reading the contract would honestly differ as to the meaning thereof, that con-

struction will be adopted which is most favorable to the insured.

But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense.

It is entirely competent for the parties to stipulate, as they did in this case, "that this policy should be void and of no effect, if, without notice to the company, and permission therefor endorsed hereon, . . . the premises shall be used or occupied so as to increase the risk, or cease to be used or occupied for the purposes stated herein; . . . . or the risk be increased by any means within the knowledge or control of the assured; . . . . or, if mechanics are employed in building, altering, or repairing premises named herein, except in dwelling-houses, where not exceeding five days in one year are allowed for repairs."

These provisions are not unreasonable. The insurer may have been willing to carry the risk at the rate charged and paid, so long as the premises continued in the condition in which they were at the date of the contract; but the company may have been unwilling to continue the contract under other and different conditions, and so it had a right to make the above stipulations and conditions on which the policy or the contract should terminate. These terms and conditions of the policy present no ambiguity whatever. The several conditions are separate and distinct, and wholly independent of each other. The first three of the above conditions depend upon an actual increase of risk by some act or conduct on the part of the insured; but the last condition is disconnected entirely from the former, whether the risk be increased or not. This last condition may properly be construed as if it stood alone, and a material alteration and repair of the building beyond what was incidental to the ordinary repairing necessary for its preservation, without the consent of the insurer, would be a violation of the condition of the policy,

even though the risk might not have been, in fact, increased thereby. The condition that the policy should be void and of no effect if "mechanics are employed in building, altering, or repairing the premises named herein," without notice to or permission of the insurance company, being a separate and valid stipulation of the parties, its violation by the assured terminated the contract of the insurer, and it could not be thereafter made liable on the contract, without having waived that condition, merely because in the opinion of the court and the jury the alterations and repairs of the building did not, in fact, increase the risk. The specific thing described in the last condition as avoiding the policy, if done without consent, was one which the insurer had a right, in its own judgment, to make a material element of the contract, and, being assented to by the assured, it did not rest in the opinion of other parties, court or jury, to say that it was immaterial, unless it actually increased the risk.

If the last stipulation had been so framed as to require the element of an increased risk to be incorporated into the condition that if "mechanics are employed in building, altering, or repairing the premises named herein," without notice to the company and its permission in writing endorsed on the policy, then there would have been presented a question of fact for the jury whether such alterations and repairs constituted an increase of the risk. But this condition, being wholly independent of any increase of risk, its violation without the consent of the insurer, or waiver of the breach, annulled the policy.

This being the proper construction, as we think, of the terms and conditions of the policy, and it being shown that the insured in August, 1886, without the knowledge or written consent of the insurer, employed carpenters and brick masons, and reconstructed and enlarged the vaults and offices of the court-house — reconstructing the foundations corresponding to the enlargement of the vaults, which necessitated the cutting of the floors and ceilings of the different offices — and that this work occupied five or six weeks; and in connection therewith necessitated painting, and a new method of

heating the offices of the register of probate and the clerk of the court, (this change in the method of heating being completed about midnight of November 3, 1886, and the fire which destroyed the building occurring some two hours thereafter,) clearly entitled the plaintiff in error to the instruction requested, that "if the work done by the mechanics, as disclosed by the evidence, increased the hazard while such work was being done, then the plaintiff is not entitled to recover." This instruction, which the court declined to give, presented the question of fact whether there had been any violation of the condition that the premises should not be so used or occupied as to increase the risk, or that the risk should not be increased by any means within the knowledge or control of the assured.

The court not only refused this instruction, but in its charge to the jury so construed the condition that if "mechanics are employed in building, altering, or repairing the premises named herein," without the consent of the insurer, as to make it mean that such alterations and repairs must be shown to have increased the risk in point of fact, and that such increase of risk must have existed at the time of the fire.

If the mechanics were employed in altering and repairing the building in a manner beyond what was required for its ordinary repair and preservation, and in such a material way as constituted a breach of the condition of the contract, it is difficult to understand upon what principle the charge of the court can be sustained. The condition which was violated did not, in any way, depend upon the fact that it increased the risk, but by the express terms of the contract was made to avoid the policy if the condition was not observed. The instruction of the court gave no validity or effect to the condition and its breach, but made it depend upon the question whether the acts done in violation of it, in fact, increased the risk, and whether such increased risk was operative at the date of the fire.

The court below proceeded upon the theory that the fire having occurred after the employment of the mechanics had ceased, such employment, and the making of the alterations

and repairs described, did not constitute a breach at the time of the fire; that the increased risk, which was necessary to render the policy void, must be. found to have existed at the time of the fire, and not at any preceding date.

But aside from the error of the court in refusing to give the specific charges requested, and in the general charge, as given, it appears, by the bill of exceptions, that upon the conclusion of the testimony establishing the foregoing facts, and about which there is no controversy, the defendant made the following motion : " That a verdict be directed for it on the ground that there is no evidence competent to be submitted to the jury that the building, altering, and repairing shown by the evidence was not such altering and repairing as avoided the policy." This motion was denied by the court, and the defendant excepted. Under the construction we have placed upon the last condition, above quoted, we are of opinion that the defendant was entitled, on the conceded facts, to have a verdict directed in its favor on the ground that the employment of mechanics to make such material alterations and repairs as were made, without the knowledge or consent of the plaintiff in error, was in and of itself such a violation of the terms of the policy as rendered it void, without reference to the question whether such alterations and repairs had increased the risk or not. The principles of law applicable to this question are stated and illustrated in the following authorities :

In *Ferree* v. *Oxford Fire and Life Ins. Co.*, 67 Penn. St. 373, the policy of insurance contained the provision that it should not " be assignable without the consent of the company expressed thereon. In case of assignment without such consent, whether of the whole policy or of any interest in it, the liability of the company in virtue of said policy shall thenceforth cease." The assured assigned the policy, and the court held that the condition was a perfectly legal one, and that the company was not liable, although the plaintiff had redeemed the policy previously assigned, and was the holder thereof at the time of the suit.

In *Fabyan* v. *Union Mutual Fire Ins. Co.*, 33 N. H. 203,

207, the policy provided that procuring other insurance without the consent of the company would avoid the policy. Other insurance was procured, and the court held " that by the terms of the policy, this discharged the defendant from liability — their promise contained in the policy to pay the plaintiff in case of loss, being upon the condition that in case of such double insurance their assent thereto should be endorsed on the policy."

In *Moore* v. *Phœnix Ins. Co.*, 62 N. H. 240, the policy contained, among other provisions, the following conditions: "If the above-mentioned premises shall become vacant and unoccupied for a period of more than ten days . . . without the assent of the company endorsed hereon, . . . then, and in every such case, this policy shall be void." At the time the premises were destroyed they were occupied, but for a period of at least three months prior to that time they were unoccupied, although without the knowledge of either the assured or the insurer. The court held that the conditions of the policy had been broken by the unoccupancy of the premises, and that " the contract being once terminated could not be revived without the consent of both of the contracting parties. It is immaterial, then, whether the loss of the buildings is due to unoccupancy or to some other cause."

In other New Hampshire decisions it is held that a departure from the conditions, without the written consent of the insurer, avoided the policy and terminated the contract. *Shepherd* v. *Union Mutual Ins. Co.*, 38 N. H. 232; *Gee* v. *Cheshire M. F. Ins. Co.*, 55 N. H. 65; *Sleeper* v. *N. H. Ins. Co.*, 56 N. H. 401; *Hill* v. *Ins. Co.*, 58 N. H. 82; *Baldwin* v. *Phenix Ins. Co.*, 60 N. H. 164; *Crafts* v. *Union Mutual Ins. Co.*, 36 N. H. 44; *Dube* v. *Mascoma Mutual Ins. Co.*, 64 N. H. 527.

It is competent for the parties to agree that this or that alteration or change shall work a forfeiture, in which case the only inquiry will be whether the one in question comes within the category of changes which by agreement shall work a forfeiture. May on Insurance, (1st ed.,) sec. 223, citing *Lee* v. *Howard Fire Ins. Co.*, 3 Gray, 583; *Glenn* v. *Lewis*, 8 Exch. 607.

In *Frost's Detroit Lumber Works* v. *Millers' Mut. Ins. Co.*, 37 Minnesota, 300, 302, the court was called upon to construe a contract of insurance which contained the following provision : " Such ordinary repairs as may be necessary to keep the premises in good condition are permitted by this policy ; but if the buildings hereby insured be altered, added to, or enlarged, due notice must be given and consent endorsed hereon." The building insured was subsequently materially enlarged, and the court held, inasmuch as notice was not given to the company, that under the construction given to the clause the policy was avoided, although the risk was not increased by the alterations which had been made to the building.

In *Mack* v. *Rochester Ins. Co.*, 106 N. Y. 560, 564, the policy contained a condition similar to the one in the policy in this case, providing that the working of mechanics in building, altering, or repairing any building covered by the policy, without the written consent of the company endorsed thereon, would cause a forfeiture of all claim under the policy. Mechanics were at work making changes in the building at the time of the fire, without the consent of the insurer, and the court held that this effected an avoidance of the policy. The court said that "certain conditions are very generally regarded by underwriters as largely increasing the hazards of insurance, and they, unless corresponding premiums are paid for extra risks, are usually intended to be excluded from the obligation of the policy. Such are the conditions in reference to unoccupied houses, changes in the occupation from one kind of business to another more hazardous, the use of inflammable substances in buildings, and their occupation by carpenters, roofers, etc., for the purpose of making changes and alterations. These conditions, when plainly expressed in a policy, are binding upon the parties and should be enforced by the courts, if the evidence brings the case clearly within their meaning and intent. It tends to bring the law itself into disrepute, when, by astute and subtle distinctions, a plain case is attempted to be taken without the operation of a clear, reasonable, and material obligation of the contract."

The principle announced in the last-cited case was also

enunciated in *Lyman* v. *State Mut. Ins. Co.*, 14 Allen, (Mass.,) 329.

In *Kyte* v. *Commercial Union Assurance Co.*, 149 Mass. 116, 122, a policy was sued upon containing the provision that it should become void if the circumstances affecting the risk should be altered so as to increase the risk; or, if articles subject to legal restriction shall be kept in quantities or manner different from those allowed or prescribed by law. When the premises were insured they were used as a common victualling place, and subsequently intoxicating liquors were sold illegally. The judge before whom the case was tried instructed the jury in substance that if that illegal use was temporary, not contemplated at the time when the policy was taken by the plaintiff, and ceased before the fire, then the fact that he had made an illegal use of the premises during the time covered by the policy would not deprive the plaintiff of the right to maintain the action; and that his right under the policy, if suspended while the illegal use of the building continued, would revive when he ceased to use it illegally. The Supreme Judicial Court of Massachusetts, in considering this instruction, said: "The question is thus presented whether the provision of the policy that it shall be void in case of an increase of risk means that it shall be void only during the time while the increase of risk may last, and may revive again upon the termination of the increase of risk." "The contract of insurance depends essentially upon an adjustment of the premium to the risk assumed. If the assured, by his voluntary act, increases the risk, and the fact is not known, the result is that he gets an insurance for which he has not paid." And again: "An increase of risk which is substantial, and which is continued for a considerable period of time, is a direct and certain injury to the insurer, and changes the basis upon which the contract of insurance rests; and since there is a provision that in case of an increase of risk which is consented to, or known by the assured and not disclosed, and the assent of the insurer obtained, the policy shall be void, we do not feel at liberty to qualify the meaning of these words by holding that the policy is only suspended during the continuance of such increase of risk."

The decision of the Supreme Court reversed the lower court, which had proceeded exactly upon the same theory adopted by the Circuit Court in the case under consideration. The principles laid down in this and the other cases cited clearly establish that the general instruction to the jury complained of in the present case was erroneous.

*Judgment reversed and case remanded with instructions to set aside the verdict and to order a new trial.*

MR. JUSTICE BREWER dissented.