FIDELITY–PHENIX INS. CO. et al. v. CHICAGO TITLE & TRUST CO.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1926.)

No. 3662.

1. Insurance ⟨⟩268.

Breach of express warranty in marine policy of insurance bars recovery whether or not it caused the loss.

2. Insurance ⟨⟩272—Insurer held not liable on marine policy on vessel "warranted passenger steamer," which was not used, licensed, nor lawfully equipped for carrying passengers (Comp. St. § 8260).

A provision in a marine policy, "warranted passenger steamer," bars recovery on the policy for her loss, where at no time between issuance of the policy and her loss was she used or licensed to carry passengers and she was not equipped with water-tight bulkheads as required of passenger steamers by Comp. St. § 8260.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in admiralty on a marine insurance policy by the Chicago Title & Trust Company, receiver, against the Fidelity-Phenix Insurance Company and others. Decree for libelant, and respondents appeal. Reversed.

John S. Lord, George L. Wire and Charles L. Cobb, all of Chicago, Ill. (D. Roger Englar and Henry N. Longley, both of New York City, of counsel), for appellants.

Charles E. Kremer, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. Libel on a marine insurance policy issued by the appellants upon the steamer Norland.

The policy covered the period from September 8, 1922, to September 8, 1923. On November 12, 1922, while proceeding from Chicago to Milwaukee, partially loaded with freight, the steamer sprang a leak, the pumps gave out, and she went to the bottom—a total loss. The policy contained the following:

"Warranted passenger steamer.

"Warranted confined to Lake Michigan and tributaries but including trip from Boston, Mass., to Chicago and/or Milwaukee by a port or ports with privilege of stopover at Buffalo for the purpose of alterations."

[1] The steamer was bought in New York in August, 1922, insured there, and brought to Chicago in October. The principal defense is a breach of the warranty that the steamer was a passenger steamer. In the view we take of this question it will not be necessary to notice other contentions. The rule is that a breach of an express warranty in a policy of insurance bars a recovery whether it caused the injury or not. Arnold on Marine Insurance and Average (10th Ed.) vol. 2, §§ 632, 633; 38 Corpus Juris, p. 1064. This warranty is an express warranty as to an existing fact. It is expressed in the body of the policy, written in the face of it, is part of the contract, and must be strictly and fully true or the policy cannot be enforced. The authorities hold that an express warranty is a condition precedent, the burden of which rests upon the assured.

"The terms of the policy constitute the measure of the insurer's liability, and, in order to recover, the assured must show himself within those terms. * * * The compliance of the assured with the terms of the contract is a condition precedent to the right of recovery." Imperial Fire Ins. Co. v. County of Coos, 151 U. S. 452, 14 S. Ct. 379, 38 L. Ed. 231; McLoon v. Commercial Mutual Ins. Co., 100 Mass. 472, 97 Am. Dec. 116, 1 Am. Rep. 129.

[2] But the decision of this case does not turn upon where the burden of proof lies. The evidence upon the character of the steamer is all one way. The material facts as to her construction, equipment, and use are not disputed. At no time from her purchase in August, 1922, to the time when she sank was she used or licensed to carry passengers. From her arrival at Chicago she was licensed to and carried only freight. In outward appearance (a photograph of her appears in the record) she must have been constructed so as to carry some passengers. Many steamers on the Great Lakes carry both passengers

and freight. Appellee insists she was a passenger steamer because she was equipped to carry passengers. After reciting the arrangements for the convenience and comfort of passengers, appellee in its brief says:

"She was therefore perfectly equipped, not only for day passengers or excursion passengers, but for carrying passengers on night trips. She had the staterooms, the cabins, and dining rooms for both sexes; every convenience, with boats and life preservers in sufficient number and capacity to care for the passengers."

This equipment, plus the picture, is the whole of the *evidence* upon which we are asked to hold that she was a passenger steamer. Witnesses on both sides were asked to say whether she was a passenger or freight steamer. Some said passenger, some said freight, and some said passenger and freight. These answers were mere conclusions or opinions of the witnesses upon the question, which was for the court to decide, and cannot aid, much less control, the solution of it.

A statute of the United States (Comp. St. § 8260) provides:

"Every sea-going steamer, and every steamer navigating the great northern or northwestern lakes, carrying passengers, the building of which shall be completed after the 28th day of August, 1871, shall have not less than three water-tight cross bulkheads, such bulkheads to reach to the main deck in single-decked vessels, otherwise to the deck next below the main deck, to be made of iron plates, sustained upon suitable framework, and to be properly secured to the hull of the vessel. The position of such bulkheads and the strength of material of which the same shall be constructed shall be determined by the general rules of the board of supervising inspectors."

The general rules and regulations prescribed by the board of supervising inspectors provide:

"Every sea-going steamer, and every steamer navigating the great northern and northwestern lakes, carrying passengers, shall have not less than three water-tight cross bulkheads. Such bulkheads shall reach to the main deck in single-decked vessels, otherwise to the deck next below the main deck. For wooden hulls they shall be fastened to suitable framework, which framework must be securely attached to the hull and caught. For iron hulls they shall be well secured to the framework of the hulls and strengthened by stanchions of angle iron placed not more than two feet from center to center. One of the

bulkheads must be placed forward and one abaft the engines and boilers.

"The third or collision bulkhead must be placed not nearer than five feet from the stem of the vessel. Iron bulkheads must be made not less than one quarter of an inch in thickness, and wooden bulkheads must be of equal strength and covered with iron plates not less than one sixteenth of an inch in thickness."

No steamer can engage in carrying passengers on the Great Lakes unless she is equipped with three water-tight cross bulkheads. The evidence shows that the Norland, which was built in 1890, did not have three water-tight cross bulkheads. She had no water-tight bulkheads at all. Bulkheads are measures of safety against the danger of sinking. Requirements for safety of passengers would appear to be more important than those for their convenience and comfort. But we are not concerned with the relative importance of these requirements. Whatever other equipment she may have or be required to have, a steamer, to be qualified to engage in carrying passengers, must be equipped with bulkheads as the statute and the regulations require. If not so equipped, she cannot lawfully do that for which a passenger steamer is intended—cannot carry passengers. The evidence shows that it was not intended to use this vessel as a passenger steamer. Libelant's witness Larsen, who was sent to bring the steamer from New York, testified that when he took her over he turned her cabins into crew's quarters and tore out some of the bulkheads.

The evidence shows that this steamer was not intended to be and was not used or licensed to carry passengers; that she was intended to be and was used and licensed to carry freight only; that she was not equipped in important particulars as passenger boats are by law required to be equipped, and was not in fact a passenger steamer.

A breach of the warranty clearly appearing, the decree is reversed, with directions to dismiss the libel.