**HOME INS. CO. v. CICONETT.**

**CICONETT v. HOME INS. CO.**

Nos. 10895, 10896.

United States Court of Appeals
Sixth Circuit.

Jan. 24, 1950.

As Modified on Denial of Rehearing
March 7, 1950.

Edward B. Hayes, Chicago, Ill. (William Mellor, Louisville, Ky., on the brief) for Home Ins. Co.

Leo J. Sandmann, Louisville, Ky., For Ciconett.

Before HICKS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

These two appeals involve two separate sinkings of the Deisel Towboat "Judge Ross," owned by C. V. Ciconett and covered by an insurance policy issued by The Home Insurance Company.

The policy of insurance was originally issued October 10, 1942 for a period of one year in the amount of $8,500. It was renewed by annual certificates extending the insurance through the periods covered by the two sinkings. The first sinking occurred on September 7, 1944 while the vessel "Judge Ross" was docked at Mount Vernon, Indiana. It was raised and repaired at a cost of $3,083.54, for the recovery of which amount Ciconett filed a libel in personam in Admiralty against the Insurance Company. This action was dismissed by the District Judge, from which

ruling the appeal in action No. 10,896 has been prosecuted.

On November 28, 1944, following the renewal of the policy on October 10, 1944, the "Judge Ross," while navigating the Kentucky River, struck a submerged snag or stump which caused the second sinking. There was expended the sum of $4,677.78 in an unsuccessful attempt to raise the vessel. The boat was thereafter abandoned by the Insurance Company. Ciconett was paid $5,000 by the Insurance Company as a partial payment on the final adjusted liability without waiver of rights by either party under the policy of insurance. To recover the loss resulting from this sinking, Ciconett filed his libel in Admiralty against the Insurance Company for the sum of $8,500, plus the expenditure of $4,677.78, subject to the credit of $5,000 paid by the Insurance Company. The Insurance Company denied liability for the expenditure of the $4,677.78. The District Judge overruled this defense and entered judgment in favor of the libellant in the net amount of $8,177.-78, from which judgment the Insurance Company has prosecuted the appeal in action No. 10,895. The appeals are before us on a single record.

The first sinking arose out of the following facts as found by the District Judge and fully supported by the evidence: Captain Martin Wood was in charge of the vessel "Judge Ross" on September 6, 1944. It was moored to the bank at Mount Vernon, Indiana, at which time its crew was Captain Wood, Engineer Breeck and Melvin Johnson, a deckhand. Captain Wood discovered when he went on watch about midnight that water was entering the hull. He discovered a leak in the stern starboard rake. He started the pumps and attempted to caulk the seams and stop the leak. This was unsuccessful and the boat finally sank about six or seven o'clock a. m., September 7, 1944.

The policy contained the following provision: "IT IS WARRANTED BY THE INSURED that the said vessel . . . shall at all times have a competent watchman on board, awake and on duty." The Insurance Company claimed among other

defenses that this warranty was breached by the insured and that such breach discharged it from any liability under the policy. The libellant claimed that the warranty was not breached and that, in any event, such breach of warranty did not cause the sinking and so did not discharge the Insurance Company from liability. The District Judge found on this disputed issue of fact as follows: "There was no watchman on board and awake on September 6, 1944, when the leak began, which resulted in the sinking." The contention of counsel for libellant that the warranty was not broken is supported by very slight evidence. In our opinion, the finding is fully supported by the evidence, is not clearly erroneous, and is conclusive of the appeal in action No. 10,896. The further contention that the presence of a watchman would not have prevented the sinking of the boat under counsel's theory of how the leak started is not established by the evidence, and in any event is immaterial as a matter of law.

■ It is settled that a warranty in a contract of insurance must be literally complied with; that the only question in such cases is whether the thing warranted to be performed was or was not performed; and that a breach of the warranty releases the company from liability regardless of the fact that a compliance with the warranty would not have avoided the loss. Shamrock Towing Co. v. American Insurance Co., 2 Cir., 9 F.2d 57, 60; Fidelity-Phenix Ins. Co. v. Chicago Title & Trust Co., 7 Cir., 12 F.2d 573; Whealton Packing Co. v. Aetna Insurance Co., 4 Cir., 185 F. 108; Aetna Insurance Co. v. Houston Oil and Transport Co., 5 Cir., 49 F.2d 121, 123-124. See also Norwich Union Indemnity Co. v. H. Kobacker and Sons Co., 6 Cir., 31 F. 2d 411, 414; Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 14 S.Ct. 379, 38 L. Ed. 231. The general Admiralty Law, as shown by the foregoing cases, is applicable. Garrett v. Moore-McCormack Co., 317 U.S. 239, 243-245, 63 S.Ct. 246, 87 L.Ed. 239.

■ Libellant's contention that the failure of the Insurance Company to return the premium barred such a defense is not well taken. No effort was being made to cancel the policy in its entirety for fraudulent procurement thereof, or for some similar reason. The policy was in full force and effect. The Insurance Company was entitled to the premium, and also to stand upon the express provisions of the policy. U. S. Life Ins. Co. v. Smith, 6 Cir., 92 F. 503, 508-509; Home Ins. Co. v. Scott, 6 Cir., 46 F.2d 10, 12.

■ Nor is libellant entitled to urge at this time that breach of the warranty was waived. No such issue was raised by the pleadings. On the contrary, the libel alleged "That all of the terms and conditions of the said policy of insurance have been fulfilled." The facts urged upon us as constituting waiver may or may not be what the evidence on such an issue would have established. The question was not ruled on by the District Judge and is not before us on this appeal.

The second sinking on November 28, 1944 involves the following provision of the policy, contained in a rider attached thereto, referred to as the "Sue and Labor Clause"—"And In Case of Any Loss or Misfortune, it shall be lawful and necessary to and for the Assured or their agents, factors, servants and assigns, to give this Company prompt notice of the disaster, * * *; to sue, labor or travel for, and to make all reasonable exertions in and about the defense, safeguard and recovery of the said vessel, or any part thereof, without prejudice to this insurance; and after recovery, two competent surveyors shall be appointed, * * * whose duty it shall be to make specifications in writing, clearly stating both the amount of work and the manner in which it shall be done to make said vessel good for any damage caused by the disaster; * * * and the Assured shall contract with the party making the lowest estimate to make said repairs, to the expenditures and amount whereof, after any and all deductions provided for in this Policy have been made, the said Company will contribute according to the proportion the sum insured bears to the valuation aforesaid. * * * It is further agreed * * * in case the assured or their agents refuse to appoint a surveyor * *,

or refuse to adopt prompt and efficient plans for the safeguard and recovery of said vessel, or to repair said vessel when recovered, then the said Insurers are hereby authorized to interpose and have said vessel repaired, if she has been recoverd, or to recover said vessel and cause the same to be repaired for account of assured, to the cost of which, after any and all deductions provided for in this policy have been made, this Company will contribute according to the proportion the sum insured bears to the valuation aforesaid; * * *." The vessel was valued at $8,500 by the policy. It is under this clause that the libellant claims reimbursement for the expenditure of $4,677.78 incurred in the unsuccessful attempt to raise the vessel. In the beginning the libellant made the attempt to float the vessel free of the stump and was apparently making satisfactory progress. But shortly thereafter the Insurance Company employed a diver, Vernon Parker who took charge of the work and thereafter directed the efforts to float the vessel. Considerable expense was incurred by Parker, which, however, was found by the District Judge to be reasonable and to constitute expense as was contemplated by the terms and coverage of the "Sue and Labor Clause." The District Judge made the following conclusion of law: "The 'Sue and Labor Clause' constitutes separate coverage in the insurance policy and is supplementary to the contract of the insurance company to pay the damage to the 'Judge Ross' and authorizes libellant to recover the 'Sue and Labor' expenses incurred by him, in addition to $8,500.00, the amount provided in the policy as the total insurance."

The legal effect of the standard sue and labor clause in a policy of marine insurance is discussed and explained in American Merchant Marine Ins. Co. of New York v. Liberty Sand & Gravel Co., 3 Cir., 282 F. 514, and White Star S. S. Co. v. North British and Mercantile Ins. Co., D.C., 48 F.Supp. 808, 812, the two cases relied upon by the District Judge. The rule is well stated as follows in the White Star S. S. Co. case: "The law is well settled that the sue and labor clause is a separate insurance and is supplementary to the contract of the underwriter to pay a particular sum in respect to damage sustained by the subject matter of the insurance. Its purpose is to encourage and bind the assured to take steps to prevent a threatened loss for which the underwriter would be liable if it occurred, and when a loss does occur to take steps to diminish the amount of the loss. Under this clause the assured recovers the whole of the sue and labor expense which he has incurred, subject to the expense having been proper and reasonable in amount under all the circumstances, and without regard to the amount of the loss or whether there has been a loss or whether there is salvage, and even though the underwriter may have been paid a total loss under the main policy."

The Insurance Company agrees with the foregoing statement of the law generally applicable in cases where the policy contains the so-called standard sue and labor clause, but contends in the present case that the sue and labor clause here involved varies from the usual standard one in that the paragraph containing the clause closes with the following provision not usually present in such clauses: "No particular average claim adjusted in accordance with the terms of this Policy, shall go beyond the cost of the actual repairs made necessary in consequence of any disaster insured against, nor shall the cost of raising or recovering the vessel or of taking her to the dock or any other general average expenses be included in the partial loss claim; and this Company will be liable for all claims or losses only in proportion as the sum herein insured bears to the agreed value of the vessel as shown in the Policy, not to exceed in the aggregate in the event of claim for total loss, constructive total loss, general average, salvage charges or any expenses whatsoever, the sum hereby insured." It is the Insurance Company's contention that by reason of this concluding clause its total liability, including the expenses incurred in attempting to float the boat, is limited to $8,500.

Under the facts in this case, we agree with the ruling of the District Judge. As pointed out above, the Sue and Labor Clause is a separate paragraph in the policy

independent of the insurance coverage, and is supplementary to the contract of the underwriter to pay the damage or loss insured against. Such expenditures are for the benefit of the underwriter. In our opinion, the limitation of liability refers to the loss claims under the policy itself, and does not exclude recovery under the ancillary contract under the conditions existing in this case.

The Insurance Company also contends that no liability at all exists under the policy because the "Judge Ross" was not seaworthy, in that the bulkheads were not watertight which prevented the floating of the vessel off the stump. However, the District Judge found that "The 'Judge Ross' was not unseaworthy on the occasion of either sinking [80 F.Supp. 429, 431]," which finding does not appear to us to be clearly against the preponderance of the evidence. City of Cleveland v. McIver, 6 Cir., 109 F.2d 69.

The judgment in each appeal is accordingly affirmed.