**ATLAS ASSURANCE CO., Ltd., et al.,**
**Plaintiffs-Appellees,**

v.

**STANDARD BRICK & TILE CORPORA-**
**TION, Defendant-Appellant.**

**No. 12380.**

United States Court of Appeals
Seventh Circuit.

Jan. 19, 1959.

John E. Early, Forrest M. Condit, Evansville, Ind., Paul F. Arnold, Evansville, Ind., for appellant.

Percy Brown Jr., Louisville, Ky., Frederick P. Bamberger, Evansville, Ind., Richard F. Newell, Louisville, Ky., Ogden, Galphin & Abell, Louisville, Ky., of counsel, for appellees.

Before MAJOR, SCHNACKENBERG and HASTINGS, Circuit Judges.

MAJOR, Circuit Judge.

Plaintiffs, fourteen fire insurance companies, instituted this action against Standard Brick and Tile Corporation, for a declaratory judgment relative to their liability on certain fire insurance policies issued by them in which defendant was named as insured. Jurisdiction was based on diversity of citizenship, with the requisite amount in controversy. The complaint alleged that the premises covered by the policies were damaged by fire on August 29, 1956, and that plaintiffs were not liable on any of the policies because each contained a clause by which defendant was obligated to maintain an "approved watchman's service," which it neglected or refused to do. Defendant counter-claimed for money damages on the policies for the fire of August 29, 1956, and also for another fire which occurred February 2, 1957, on the same premises. After joinder of issues, the court, on April 8, 1958, on plaintiffs' motion entered a summary judgment. From this judgment defendant appeals.

On August 23, 1955, plaintiffs issued policies of fire insurance for a period of three years covering defendant's brick manufacturing plant located in Evansville, Indiana. These policies were renewals of policies which covered the same premises from August 23, 1952 to August 23, 1955. On August 29, 1956, and on February 2, 1957, the premises insured were damaged by fire. Both of these fires were set by a confessed arsonist. All of the policies were the same as to form and each contained a Watchman's Clause, as follows:

"In consideration of the reduced rate of premium at which this policy is written, it is made a condition of this policy that, so far as within the control of the Insured, *an approved watchman's service with approved recording system or watch clock shall be maintained at such times as the premises are not in actual operation.*" (Italics supplied.)

The first contested issue presented by defendant is as follows:

"Is there a genuine issue as to a material fact as to whether the terms of the clause requiring 'approved watchman's service' were satisfied by the nature of the watchman's service provided by the de-

fendant at the time of the loss or by the approval of the plaintiffs?"

Plaintiffs' motion for summary judgment alleged:

" * * * (1) that no genuine issue existed as to any material fact, (2) the policies involved in the suit had been delivered to the defendant and were in the possession of the officers of the defendant at the time of each of the fires, (3) the premises described in said policies were not in actual operation after March 27, 1956, and were not in actual operation on the date of either of the fires, (4) no watchman was upon the premises at the time of either of the fires, and (5) it was within the control of the defendant to, but the defendant did not maintain at such premises any watchman's service at the time of either of the fires."

Plaintiffs submitted in support of their motion for summary judgment a number of affidavits, as well as the depositions of certain of defendant's officials. Defendant also submitted affidavits in support of its response to plaintiffs' motion. Defendant's president, Ralph Kleymeyer, testified by deposition that the policies were in the possession of the officers of the defendant at the time of the fires; that operations on a twenty-four hour basis had ceased and the kiln fires drawn on March 27, 1956, several months before the first fire, and that the plant was not in actual operation at the time of either of the fires.

Each of the fires occurred some time after midnight. In reply to a question as to whether there was any watchman on the premises of the insured at the time of the fire of August 29, 1956, Kleymeyer testified:

"Q. From 10 o'clock on up to the time of the fire on the night of the fire there was not any watchman there? A. No paid watchman by our Company.

"Q. Well, on the night of the fire from 10 o'clock before the fire until the fire you had no watchman's service of any kind at the plant, did you, there was no watchman at the plant? A. That is true and that in our opinion was adequate during the twenty-four hour period for the risks involved and we had no information to the contrary."

Kleymeyer also testified that after the plant ceased operations previous to the first fire, no fires burned in the kilns, no motors were operating as when the plant was in operation and that under such circumstances they felt there was no fire hazard. He also stated that such watchman's service as was maintained was for the purpose of keeping trespassers off the premises. It is also conceded that no watchman was on duty at the time of the fire of February 2, 1957.

The district court in its opinion stated:

"The policies having been delivered to and being in the possession of the responsible officers of the defendant prior to either of the fires, the defendant was charged with knowledge of the contents of the policies by which a definite obligation was assumed. No recovery may be had by the defendant in the absence of substantial performance of such obligation by the defendant. The defendant had no watchman on the premises at the time of either fire as required by the unambiguous provisions of the Watchman's Clause. Its failure to carry out the obligation imposed upon it by the Watchman's Clause to have a watchman's service at such times as the premises were not in actual operation entitles the plaintiffs to a judgment on their motion for a summary judgment as a matter of law."

■ Cases from many jurisdictions are cited in support of this conclusion, including Norwich Union Indemnity Co. v. H. Kobacker & Sons Co., 6 Cir., 31 F.2d 411, 87 A.L.R. 1069, certiorari denied 280 U.S. 558, 50 S.Ct. 17, 74 L.Ed. 613; Home Ins. Co. v. Ciconett, 6 Cir., 179 F.2d 892; Coleman Furniture Corp. v. Home Ins. Co. of New York, 4 Cir., 67 F.2d 347; Whealton Packing Co. v. Aetna Ins. Co., 4 Cir., 185 F. 108. We

see no point in entering into a detailed analysis or discussion of these cases. Undoubtedly, they all sustain the legal proposition that a Watchman's Clause is a condition which must be complied with by the insured as a prerequisite to the right to recover. Relative to a Watchman's Clause almost identical with that of the instant case, the court in the Coleman Furniture Corp. case stated (67 F. 2d at page 349):

"Certainly the terms of this clause as quoted above are clear and unambiguous. Indeed, it would be hard to conceive how the language could be more explicit. The insured solemnly contracted to do certain things, in consideration of a reduced rate. These things it did not do and the whole system of insurance would be destroyed if agreements of this character were to be held to be immaterial and of no force."

We think this is a sound statement and we agree with it. The principle is supported by the other cited cases.

■ Defendant, in consideration of a reduced premium rate, was obligated by contract to maintain a watchman's service "at such times as the premises are not in actual operation." This by its own admission it failed or neglected to do, and as a result it is precluded as a matter of law, absent other considerations, from enforcing a liability which otherwise had been undertaken by plaintiffs. In this connection, however, defendant advances the theory, novel we think, that plaintiffs by their action and conduct approved the watchman's service maintained by defendant at the time of the fires. We have some difficulty following defendant's argument on this point. Certainly it is closely allied with the contention, subsequently discussed, that plaintiffs waived the requirements of the Watchman's Clause.

Defendant in its brief states:

"Thus, in light of the ambiguity of the clause calling for 'approved watchman's service', * * * it is a reasonable interpretation of lan-

guage and fact to conclude that the plaintiffs' knowledge of the defendant's watchman's service and the plaintiffs' inaction constituted an approval of the service by the plaintiffs."

While defendant does not expressly so state, it appears that this theory is based upon a rule that an ambiguous written instrument will be construed in harmony with the construction placed upon it by the parties. The fallacy of this theory resides in the fact that there is no ambiguity in the clause in controversy as it applies to the instant situation. It clearly requires an approved watchman's service "at such times as the premises are not in actual operation." Assuming without deciding that the phrase, "an approved watchman's service," is ambiguous, it is beside the issue because defendant at the times of the fires maintained no watchman's service, approved or otherwise. Defendant cites no case in support of its approval theory, and we think it is without merit.

The second contested issue, as stated by defendant, is as follows:

"Is there a genuine issue as to a material fact as to whether the plaintiff insurance companies, through their agents, were prior to any loss sufficiently familiar with the watchman's service provided by the defendant, so that their failure to void the policies constituted a waiver of the watchman clause?"

■ The defense of waiver was not raised by defendant in the trial court by plea or otherwise. Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. requires that such defense be affirmatively set forth, and it has been held that it may not be raised for the first time in a court of review. Allstate Ins. Co. v. Moldenhauer, 7 Cir., 193 F.2d 663, 665. See also Tornello v. Deligiannis Brothers, Inc., 7 Cir., 180 F.2d 553, 556; Telex, Inc. v. Schaefer, 8 Cir., 233 F.2d 259, 262.

■ Even though this issue might be properly disposed of on this basis, we

have considered defendant's argument in connection with the record for the purpose of determining whether there is shown any "genuine issue as to any material fact." In the first place, we think the issue is awkwardly posed. Even though we indulge in the dubious assumption that plaintiffs were familiar with the character of watchman's service maintained by defendant, they were under no obligation to cancel or void the policies, and their failure in this respect, standing alone, would not constitute waiver. Defendant's lack of performance did not render the policies void or even voidable. The insurance was in effect at all times. It was only when the plant was not in actual operation that the Watchman's Clause became material. Even then, the policies remained in force, and failure of compliance had no effect other than to preclude recovery. In Home Ins. Co. v. Ciconett, 6 Cir., 179 F.2d 892, 894, the court held that the policy was not forfeited by the insured's breach of the Watchman's Clause but remained in full force and the insurer was entitled to stand on the express provisions of the clause. Thus, it is our view that plaintiffs were under no obligation to cancel or void the policies.

More important, however, the record, in our opinion, presents "no genuine issue of any material fact" relative to defendant's belated defense of waiver. Rule 56(e) of the Federal Rules of Civil Procedure provides:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Defendant in its brief states that there is evidence "indicating that the plaintiffs were in fact familiar with the watchman's service provided by defendant at the time of the loss." The specific question, however, is whether plaintiffs had knowledge that defendant maintained no watchman's service at the time of the loss. Defendant's president, Kleymeyer, admitted that no notice was given to plaintiffs that defendant was not complying with the Watchman's Clause or that it did not intend to do so. Plaintiffs' knowledge, therefore, if such it had, must be inferred from proven facts which would be admissible in evidence. Such facts defendant professes to find either in the deposition of Kleymeyer or in his affidavit. Briefly summarized, they are that plaintiffs' agents "led" Kleymeyer "to believe" that all that was required to comply with the Watchman's Clause were periodic checks by firemen; that it was "common knowledge in the community" that the east side plant had permanently discontinued operation and that it was "pretty generally known" that defendant at the time of the first fire was not maintaining watchmen around the clock. What plaintiffs' agents led Kleymeyer to believe is obviously a conclusion and would not be admissible in evidence. As this court stated in American Securit Company v. Hamilton Glass Company, 254 F.2d 889, 893:

"* * * Inasmuch as summary judgment procedure lacks the safeguard of cross-examination of an affiant, it is important that it be shown that he is competent to testify to the matters therein stated and that the facts to which he swears are admissible under the rules of evidence. Likewise, testimony contained in depositions used in a summary judgment proceeding is subject to the rules of evidence, as referred to in rule 43(a) governing admissibility. * * *"

Moreover, the reference is to a time when the plant was in operation and when defendant had no obligation under the Watchman's Clause. We doubt if what was "common knowledge in the community" or "pretty generally known" are admissible statements. In any event, we do not think that plaintiffs' knowledge could be established by inference

or otherwise from the fact that such knowledge was possessed by some other person or group of persons. Kleymeyer in his affidavit also states that it had been their established policy, "known to Mr. McReynolds, that we did not plan to employ personnel to provide 24-hour watchman's service when the plant was not in operation." Again, this statement is a conclusion and clearly would be inadmissible. We recognize, of course, that where knowledge is the scienter, it cannot ordinarily be shown by direct proof. It may be inferred from acts and circumstances in proof. Such acts and circumstances, however, must be proven by competent evidence.

In our view, the record contains no admissible evidence from which it could be reasonably inferred that plaintiffs, through their agents, had knowledge of defendant's failure or neglect to comply with the Watchman's Clause at the time of the first fire. Thus, no genuine issue of fact was presented. We reach this conclusion without taking into consideration that plaintiffs' agents, in affidavits submitted by them, categorically denied having such knowledge.

Defendant further contends that in the interim between the first and second fires plaintiffs' agents conducted an investigation and became thoroughly familiar with the fact that defendant was not complying with the Watchman's Clause. More specifically, the point is that at the time of the second fire plaintiffs had knowledge that no watchman's service was being maintained by defendant and, as a result, they waived the requirement. Undoubtedly, plaintiffs during their investigation which followed the first fire acquired such knowledge. However, the parties at plaintiffs' request, prior to such investigation, entered into a Non-Waiver Agreement. Obviously, the purpose of this agreement was to permit an investigation without prejudice to the rights of any of the parties. The agreement expressly so provided. In view of this agreement, defendant's contention on this phase of the case is devoid of merit.

In our judgment, and we so hold, plaintiffs' motion for summary judgment was properly allowed. The judgment is
Affirmed.