BULL et al. v. INSURANCE CO. OF NORTH AMERICA.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

No. 62.

1. INSURANCE (§ 478*)—MARINE INSURANCE—EXCEPTION OF PARTICULAR AVERAGE LESS THAN STATED PER CENT.—AMOUNT OF LOSS.

Under a policy of insurance on the hull of a vessel by which the insurer contracted to pay loss from the perils insured against if amounting to 3 per cent. of the insured value, where the rudder of the vessel was broken and repaired, the owner is not entitled to add to the cost of repairs, to make up the required 3 per cent. of value, an arbitrary sum for superintending the repairs, which was done by a salaried employé, when there is no evidence as to the amount of his salary.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1230–1238; Dec. Dig. § 478.*]

2. INSURANCE (§ 478*)—MARINE INSURANCE—EXCEPTION OF PARTICULAR AVERAGE LESS THAN STATED PER CENT.—AMOUNT OF LOSS.

A policy of insurance on a vessel provided that the insurer should pay any loss from the perils insured against if amounting to 3 per cent. of the insured value. The ship's rudder was injured and repaired by the owner. Full plates covering most or all of the rudder should have been used, but could not be obtained at once, and to avoid the delay, which was not insured against, the owner used smaller plates which, while making the rudder efficient, somewhat depreciated the value of the vessel. The cost of the repairs as made did not equal 3 per cent. of the insured value. Held, that the liability of the insurer was limited to the cost of proper repairs, and there being no evidence to show that such cost would have equaled the required 3 per cent., the owner was not entitled to add the estimated depreciation in the value of the vessel to the cost of the repairs as made to bring the loss within the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1230–1238; Dec. Dig. § 478.*]

Appeal from the District Court of the United States for the Southern District of New York.

The following is the opinion of the District Court by Hough, District Judge:

Respondent insured libelants' steamer Dorothy by a policy in which the hull was valued at $72,534, and it was agreed to pay loss by perils insured against "if amounting to three per cent.," or $2,176.02.

The Dorothy's rudder received injury, it was repaired, and the sole question presented is whether the libelants' loss amounts to $2,176.02.

"Loss" means that which has been wasted. Its signification is perhaps best tested by considering it as opposed to "gain."

When, however, loss is to be translated into dollars and cents, and the process of so doing has been matter of litigation for centuries, custom and precedent introduce rules that must be observed, however plain mere word definition seems.

The cost of replacing that which has been wasted cannot always be the measure of loss under an insurance policy, for on the one hand the actual

---

cost may have been unnecessary or extravagant, and on the other it may be impossible to replace or wholly repair that which has been lost.

Therefore both the amount of loss, and the reasonable cost of replacement, are properly questions of fact, to be proven in part by opinion evidence, or testimony as to custom—which is at bottom matter of opinion. The burden of proof is on the assured.

What gives rise to litigation here is that the amount of money actually expended by libelants on the rudder cannot be claimed on their own evidence to amount to $2,176.02, wherefore they add $300 for permanent depreciation, and sue accordingly.

The facts are that it was undoubtedly desirable to repair the rudder with large plates covering most if not all its surface; but such plates were not in stock, much delay would have resulted if repairs had halted while they were being made, time was valuable, and not insured. Consequently libelants, with the approbation of Lloyds' surveyor, put on small plates, thereby increasing rivets, shortening the life of the rebuilt rudder, and affecting the sale price of the Dorothy by a sum variously estimated at from $300 to $800.

It is not found necessary to discuss or decide whether such a proceeding as this, voluntary, and unnecessary, can be said to amount to that permanent depreciation, for which recovery can be had, under such cases as Giles v. Eagle Ins. Co., 2 Metc. (Mass.) 140. Let it be assumed that some basis for recovery exists, yet it remains true that the measure of damages is not the lessening of sale price, but what it would have cost to make thorough repairs when the partial or imperfect job was done. This case is not one of inability to repair or replace, but of a voluntarily imperfect piece of work; it bears no resemblance to that hogging or deformation of hull, which is present in all the decisions relating to "permanent depreciation."

Applying these principles, libelants cannot claim more for actual payments than their own witness Mr. Congdon declared to be justified, viz.:

| | |
|---|---:|
| Towage | $    30 00 |
| Repair bill | 1,946 98 |
| Superintending repairs | 82 00 |
| Telegrams by owners in connection with repairs | 20 00 |
| Total | $2,079 98 |

This witness did not, and could not, testify as to what was paid; he only stated the items proper in kind. It was still incumbent on libelants to show that their loss included what they claim.

I can find in the evidence nothing to show that $20 was expended in telegrams relating to repairs, and experience leads me to think the amount excessive.

It is in my judgment shown that $70 of the superintendence fee is mere bookkeeping. Mr. Graham did superintend, and if he had been specially employed for this job his reasonable charge would be collectable; but if the Dorothy had not been injured libelants would have paid Mr. Graham just the same, he being in their regular employ. Consequently, what they would have paid, at all events, cannot have been lost by the Dorothy's injury.

Libelants' loss therefore, as expressed by payments made and proven, is no more than $1,988.98, or $187.04 less than the agreed upon 3 per cent.

The final inquiry, therefore, is how much more would have been the cost of putting on large plates, when the rudder was repaired with small ones?

Mr. Graham is the only man who, from personal observation, testifies on this point. His statements are largely guesswork, but it is plain that there is no evidence showing that the additional cost would have been as much as $187.04.

It follows that libelants on their own evidence and their own legal theory have not shown a loss amounting to $2,176.02.

Libel dismissed, with costs.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, dismissing a libel. The action

was brought to recover on a policy of marine insurance on the steamship Dorothy against underwriters on the hull. The claim is under the clause of the policy, which provides for "particular average payable on each valuation separately, or on the whole, if amounting to three per cent.," etc.

W. U. Taylor, of New York City, for appellants.

D. R. Englar, of New York City, for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The only question in the case is whether the loss amounts to the 3 per cent. stipulated in the policy; such 3 per cent. is $2,176.02. The claim presented is for:

| | |
|---|---:|
| Repair damage | $1,946 98 |
| Towage | 30 00 |
| Superintending repairs | 82 00 |
| Telegrams | 20 00 |
| Surveys | 30 00 |
| Protest charges | 6 00 |
| Adjuster's charges | 64 00 |
| | $2,178 98 |

[1] The last three items, however, are a proper charge against underwriters only if the loss amounts to 3 per cent.; they may not be availed of to increase the loss to 3 per cent. This reduces the claim to $2,078.98. The item for superintending repairs includes $70 paid for services of the insured's own salaried employé. Judge Hough rejected this, and we concur in the rejection because it was not shown what his salary was, so there was no way to ascertain what would be the pro rata for the time he was employed on this job (the $70 is an arbitrary charge). The claim is thus reduced to $2,008.98.

[2] The injury was to the rudder; it was not repaired so as to put it in the condition it was in before. Instead of having new full plates, the bottom half of the old plate was cut off and new half plates riveted on below what was left. This was because new full plates could not be got at the time the vessel was put on dry dock for these repairs, the insured preferred not to lose the time waiting for them. But the underwriter does not insure loss by delay and was in no way interested in it. It fulfills its contract if it pays the cost of proper repairs made at the time of the accident. It is only when the insured makes temporary repairs for the interest of all concerned that they can be collected from underwriters; as, for example, to postpone permanent repairs until the vessel arrives at a port where they can be made more reasonably. Gow on Marine Insurance, p. 214. This patchwork sort of repair, while making the rudder efficient, did to some extent, as the evidence indicates, depreciate the value of the vessel. The amount of such depreciation is asserted to be from $300 to $500. Under the authorities (McArthur on Marine Insurance [2d Ed.] p. 228; Gow on Marine Insurance, pp. 216, 217) when repairs are made with this result the shipowner is entitled to add to the cost of repairs something for the diminution in the value of the vessel. This proposition, however, ac-

cording to the same authorities, is coupled with the proviso that the combined amount shall not be in excess of the estimated cost of effecting complete repairs, less the usual deductions for improvements.

The real question then is: What additional sum would it have cost when repairs were made to put on full plates instead of half ones? Libelant's witness on his direct estimated this at $150 to $200, but on cross he would not swear it could not have been done for $100 extra. A witness called for respondent testified that the difference in cost of repair would be about $60, $40 for materials, $20 for labor. Upon this state of the proof, we cannot say that it would have cost the $167.04 necessary to bring the admitted cost, $2,008.98, up to 3 per cent., or $2,176.02.

Decree affirmed, with costs.