## WHITE STAR S. S. CO. et al. v. NORTH BRITISH & MERCANTILE INS. CO., Limited, et al.

### No. 15653.

District Court, E. D. Michigan, S. D.

Jan. 18, 1943.

Hill, Hamblen, Essery & Lewis, of Detroit, Mich. (Carl V. Essery, of Detroit, Mich., of counsel), for libelants and impleaded respondent.

Miller, Canfield, Paddock & Stone, of Detroit, Mich., and Horace T. Atkins, of New York City, for respondent.

TUTTLE, District Judge.

This is an action on the sue and labor clause of a policy of hull insurance. It has been heard on the pleadings, an agreed statement of facts filed by the parties, the documents to which reference is made in the statement, and the arguments of proctors for the respective parties.

Libelant, White Star Steamship Company, a Michigan corporation, was the owner and libelant, Tashmoo Transit Company, a Michigan corporation, was the charterer, under a season charter, of the steamer Tashmoo, a passenger vessel operated in the excursion business on Detroit River, Lake St. Clair and St. Clair River. Respondent, North British & Mercantile Insurance Company, Ltd., is a British corporation engaged in the business of marine insurance. Impleaded respondent, Osborn & Lange, Inc., is an Illinois corporation with its principal office at Chicago, engaged in the business, among others, of arranging for marine insurance coverage and of average adjusting.

## The Facts

On May 31, 1936, respondent North British & Mercantile Insurance Company, Limited, issued a policy of hull insurance to libelants, upon the steamer Tashmoo in the sum of twenty thousand ($20,000.00) dollars. Respondent's policy was part of a total hull insurance of one hundred thousand ($100,000.00) dollars. The policy contained, among other provisions, a sue and labor clause as follows:

"And in case of any loss or misfortune it shall be deemed lawful and necessary for the Assured, their factors, servants and assigns, to sue, labour and travel for, in, and about the defense, safeguard and recovery of the said Vessel, etc., or any part thereof, without prejudice to this insurance; to the charges whereof the said Assurers will contribute according to the rate and quantity of the sum herein insured. No abandonment shall in any case be effectual unless notice thereof be made in writing to the agents of the Assurers, nor unless the expense of recovering and repairing the vessel, as finally established, exceeds the combined value of vessel, etc., as stated herein. It is especially declared and agreed that no acts of the Assurers or Assured shall be considered as a waiver or acceptance of the abandonment; and that if the Assurers undertake to salve the said Vessel (or to have her salved), they shall not thereby be deemed to have incurred any obligation to make repairs, but shall have the right to tender the Vessel back to the Assured at the conclusion of the Salvage operations, if at that time it appears that the expense incurred or to be incurred in recovering and repairing the vessel does not exceed such combined value."

Libelants also took out policies of protection and indemnity insurance which insured libelants as owner and as charterer, respectively, of the Tashmoo against certain liabilities, among others the following:

"(e) Any attempted or actual raising, removal or destruction of the wreck of the said vessel or the cargo thereof, or any neglect or failure to raise, remove or destroy the same. There shall be deducted from such claim for cost or expenses, the value of any salvage from or which might have been recovered from the wreck, in-

uring, or which might have inured, to the benefit of the Assured."

None of the underwriters on the policies of protection and indemnity insurance was an underwriter on the policies of hull insurance.

All of the insurance was arranged for libelants by Osborn & Lange, Inc., who also acted as average adjusters by appointment of libelant, in respect to the several claims which arose under the said insurance as a result of the disaster sustained by the Tashmoo on June 18, 1936, the disaster out of which this suit arises.

About 11:30 P. M. on June 18th, the Tashmoo, while enroute from Sugar.Island in lower Detroit River to Detroit, Michigan, on a moonlight excursion, struck some object concealed beneath the water and holed her bottom in the way of the boiler room, causing her to leak badly and the water to enter the boiler and engine rooms. She immediately proceeded at full speed to the nearest available dock at which she could disembark her passengers, the Brunner-Mond dock on the Canadian shore just above Amherstburg, Ontario, Canada, where she arrived about 11:50 P. M. On arrival at the dock, as the water was gaining on the pumps, a tug with extra pumping equipment was summoned from Amherstburg. The tug arrived in a short time but despite the efforts of the tug, the water continued to gain and early on the morning of June 19 the Tashmoo settled on the river bottom alongside the Brunner-Mond dock, listed to port about 15 degrees with her main deck under water and her upper decks above water.

A surveyor of United States Salvage Association, Inc., acting for respondent and the other hull underwriters, examined the Tashmoo on June 19th and at his direction and that of Hull Underwriters, bids for raising the vessel were invited and on June 20th a contract on a "no cure no pay" basis, to raise the vessel and deliver her to the nearest dry dock was let to Pyke Salvage Company of Kingston, Ontario. Before salvage operations were begun, at the suggestion of libelants and with the approval of the surveyor for Hull Underwriters and all other parties concerned, certain furniture and equipment on the upper decks of the Tashmoo, of a nature that was particularly susceptible to being damaged or lost during salvage operations, was removed by libelants and taken to their warehouse at Detroit for safekeeping. It was agreed by all the parties that this furniture and equipment was to be put back aboard the Tashmoo if and when she was raised and delivered in dry dock.

Salvage operations were carried on until July 8th when serious additional damage to the hull of the Tashmoo having developed, Pyke Salvage Company declined to proceed further with the contract. In the meantime, officials of the Canadian Government, acting under statutory powers, had notified libelants that the Tashmoo in the position in which she lay was a menace to navigation and must be removed without further delay. Under Canadian law, when a vessel which has sunk in navigable waters is found by the Government officials to be a menace to navigation, the owner is required to remove the vessel at his own expense and on failure of the owner to do so the Canadian Government is authorized by statute to remove the vessel and collect the cost of removal from the vessel's owner.

A further examination of the vessel was made by the surveyor for Hull Underwriters on July 8th and 9th, following which he telegraphed his principals as follows:

"Tashmoo situation greatly changed. Vessel broken open starboard side and bottom and various beams buckled. Also hull buckled and twisted. Upper decks badly twisted and buckled and otherwise damaged including paddle boxes and starboard wheel. This due to vessel's uneven position on rock and boulder bottom also current and wash of passing steamers which has also hampered salvor's efforts. In my opinion provided vessel floated and delivered to drydock repairs would exceed $130,000 and probably more. My opinion hull underwriters should make no further effort salvage vessel which is also opinion our wreckmaster, but should consent to owner taking any steps owner may desire as to removal of wreck. As Canadian Government has ordered and pressing removal should have prompt action. Sue labor expenses should not exceed $1,500. Equipment removed has sound value approximately same amount."

To this telegram the Hull Underwriters replied: "We agree to stopping salvage operations and owners making arrangement to remove wreck at their expense."

On receipt of this telegram the surveyor of United States Salvage Association, Inc., acting in this instance for libelants' Protection and Indemnity Underwriters, invited bids for removal of the wreck of the

Tashmoo in compliance with the order which had been given to libelants by the Canadian Government. The lowest bid received was that of Pyke Salvage Company and with the approval of Protection and Indemnity Underwriters, libelants entered into a contract with Pyke wherein he agreed to remove and dispose of the wreck of the Tashmoo to the satisfaction of the Canadian Government for the sum of $12,840 and any salvage he might be able to realize from the wreck. The removal of the wreck was completed on August 29 and on certification by the Canadian Government and Brunner-Mond, Canada, Ltd., that the removal had been completed in satisfactory manner, libelants, through their Protection and Indemnity Underwriters, paid to Pyke the sum of $12,840. called for in his contract.

Following the exchange of telegrams between the surveyor and Hull Underwriters, libelants, acting through Osborn & Lange, Inc., as their average adjusters, served formal proofs of loss on Hull Underwriters and claimed a total loss under the policies of hull insurance. In due course, Hull Underwriters paid to libelants the face amounts of the hull policies but refused to accept abandonment of the wreck previously tendered to Hull Underwriters by libelants and expressly disclaimed any title thereto. Respondent, North British & Mercantile Insurance Company, Ltd., which paid the face of its policy of $20,000 on July 16, noted on the policy "Total loss paid hereunder," and took a receipt for the payment which included this language: "In full settlement of all claims except Sue & Labor and Travel for expenses per S/S Tashmoo 6/18/36, a/c White Star S/S Co."

On July 27th United States Salvage Association, Inc., received an offer of $1,400 accompanied by a cashier's check in that amount, payable to Osborn & Lange, Inc., for the furniture and equipment which had been removed from the Tashmoo for safekeeping before salvage operations were begun by Hull Underwriters. The Salvage Association, acting for both groups of underwriters, recommended acceptance of the offer "without prejudice" and "for the account of whom it may concern". Acceptance of the offer was authorized by the Hull and by the Protection and Indemnity Underwriters and the Salvage Association delivered the check for $1,400 to Osborn & Lange, Inc., who agreed to hold the proceeds as a trust fund "for the account of whom it may concern."

Both Hull Underwriters and Protection and Indemnity Underwriters claimed the proceeds of the sale and to settle the controversy, the two groups of underwriters agreed to arbitration before Robert G. McCreary, who, in his decision, rendered on June 2, 1937, awarded the proceeds of the sale to Protection and Indemnity Underwriters. See Steamer Tashmoo, 1937 A.M. C. 1536. In removing this furniture and equipment to libelant's warehouse at Detroit, expense in the amount of $581.23 had been incurred and after payment of this expense in accordance with the arbitration award, the amount realized from the sale was $818.77. This amount Osborn & Lange, Inc., has continued to hold as trustee "for the account of whom it may concern" pending settlement of the question which arose following the arbitrator's award, concerning the liability of Hull Underwriters for sue and labor expense incurred by libelants.

On or about June 27, 1937, Osborn & Lange, Inc., acting on behalf of libelants, served on Hull Underwriters a "Statement of Sue and Labor Expenses" covering expenses incurred by libelants and requested payment under the sue and labor clause of the Hull policies. These expenses covered services rendered by the tug Progresso early in the morning of June 19, 1936, in endeavoring to prevent the Tashmoo from sinking, services of watchmen maintained aboard the Tashmoo by libelants until salvage operations were discontinued by Hull Underwriters and materials furnished by libelants during that time. It is agreed that the items which total $532.22 were proper and reasonable in amount, and that the apportionment between the several Hull Underwriters, assuming that they are liable to reimburse libelants for these expenses, is stated correctly.

Respondent declined to pay the amount apportioned to it in the statement, whereupon libelants brought this action to enforce collection. I gather from the comments of proctors during the argument that some of the other Hull Underwriters also declined to pay their apportionments and that those underwriters, although not before the court, have agreed to abide by the result in this suit.

## The Contentions of the Parties

The issue before the court is stated by the parties in the stipulation filed of record, in this manner:

"The amount apportioned in said statement to respondent North British & Mercantile Insurance Company, Ltd. is the sum of $106.44, which amount libelants are entitled to recover from North British & Mercantile Insurance Company, Ltd. in event the court determines that said Sue and Labor expenses are not a charge either primarily or secondarily against the balance of said fund derived from the sale of said furniture and equipment.

"The question whether any Sue and Labor expenses were, now are, or in appropriate proceedings might become a charge against said fund, was not referred to said arbitrator for decision. The parties hereto agree that the balance of said fund, amounting to $818.77, held by Osborn & Lange, Inc. as trustee 'for the account of whom it may concern', is amenable in these proceedings to the order of this court, and in event the court determines that said Sue and Labor expenses were, now are, or in appropriate proceedings might be a charge either primarily or secondarily against the said balance of said fund, the court may order, adjudge and decree, the balance of said fund being sufficient to pay all Sue and Labor expense, that the libel herein may be dismissed."

In substance, respondent contends that Sue and Labor expenses are a charge against salvage; that the fund derived from the sale of the furniture and equipment and now held by impleaded respondent, Osborn & Lange, Inc., as trustee "for the account of whom it may concern" constitutes salvage; and that the sue and labor expenses incurred by libelants are a charge against and should be paid out of this fund. Respondent does not contend, at least not seriously so, that it is not liable in the first instance under the sue and labor clause of its policy to reimburse libelants for the amount apportioned to respondent in the sue and labor statement. Rather, its position is that these expenses are a charge against and should be paid out of the fund in the possession of Osborn & Lange, Inc., or in the alternative, that respondent, if held to pay under its policy, should be given recourse against and be reimbursed out of the fund to the extent of its payment to libelants. It was on this theory of the case and for the purpose of subjecting the fund in the possession of Osborn & Lange, Inc., to the jurisdiction of the court that responent impleaded Osborn & Lange, Inc., under the 56th Rule in Admiralty, 28 U.S. C.A. following section 723, as a respondent.

The libelants contend that under the facts in this case no salvage was realized. It is their position that the furniture and equipment removed for safekeeping did not become a separate entity, that is, lose its identity as part of the Tashmoo, but continued to be a part of the Tashmoo and of the property insured; that the expenses incurred by libelants in complying with the order of the Canadian Government for the removal of the wreck, that is, that part of the insured property which remained in Canada, greatly exceeded the amount realized from the sale of that part of the insured property, the furniture and equipment, which had been removed to Detroit; that in determining whether there was salvage the insured property must be viewed as a whole; and consequently that libelants, instead of realizing salvage, were left with a liability when Hull Underwriters declined to accept abandonment of the wreck or any title therein.

Libelants further contend that respondent is estopped from claiming any interest in the fund realized from the sale of the furniture and equipment. As to this contention it is libelants' position that it would be inequitable to permit Hull Underwriters to renounce any interest in the wreck in order to avoid liability for the expense of its removal and at the same time permit them to claim the benefit derived from the sale of the furniture and equipment which had been removed from the vessel and stored at Detroit for safekeeping during salvage operations by hull underwriters.

## Conclusions

In dealing with the issue presented it will avoid confusion to eliminate from consideration the circumstance that libelants had Protection and Indemnity Insurance. Any interest which Protection and Indemnity Underwriters may have in the fund before the court by reason of their reimbursement of libelants for the cost of removing the wreck must in any event be derived through libelants and is a matter which rests between those underwriters and libelants. The issue presented arises solely out of the policy of hull insurance to which the Protection and Indemnity Underwriters are not in privity and relates to the rights and liabilities, as between libelants and respondent, under that policy.

The law is well settled that the sue and labor clause is a separate insurance and is supplementary to the contract of the underwriter to pay a particular sum

in respect to damage sustained by the subject matter of the insurance. Its purpose is to encourage and bind the assured to take steps to prevent a threatened loss for which the underwriter would be liable if it occurred, and when a loss does occur to take steps to diminish the amount of the loss. Under this clause the assured recovers the whole of the sue and labor expense which he has incurred, subject to the expense having been proper and reasonable in amount under all the circumstances, and without regard to the amount of the loss or whether there has been a loss or whether there is salvage, and even though the underwriter may have paid a total loss under the main policy. American Merchant Marine Insurance Co. v. Liberty Sand & Gravel Co., Inc., 3 Cir., 282 F. 514; Kidston v. Empire Marine Insurance Company, L.R. 1, C.P. 535; Lohre v. Aitchison, 2 Q.B.D. 501, 4 A.C. (1878-9) 755; Arnould on Marine Insurance, 12th Ed., § 871. Where the assured is entitled to recover the sue and labor expense from others, the underwriter, on payment to the assured, stands in his place and is entitled to his rights. Dixon v. Whitworth, 4 C.P.D. 371; Eldredge on Marine Policies, 115. And I have no doubt, and hold the law to be, sheared of complications and questions which may arise in a particular case, that where salvage is realized from the insured property and the assured has the salvage in his possession or under his control, the underwriter is entitled to have the value of the salvage applied in reduction of sue and labor expense incurred by the assured; or to put it this way, that sue and labor expense incurred by an assured is a charge against salvage.

In the instant case we have a different problem than that. Here the question is whether salvage was realized. Specifically, does the fund derived from the sale of the furniture and equipment removed from the Tashmoo, and now in the possession of Osborn & Lange, Inc., constitute salvage as claimed by respondent, against which the sue and labor expense incurred by libelants is a charge and out of which it should be paid?

To hold with respondent on the contention, it is necessary to treat the fund realized from the sale of the furniture and equipment removed to Detroit for safekeeping during wrecking operations as having no connection with or relation to that part of the insured property which remained in Canadian waters when Hull Underwriters discontinued wrecking operations and which on orders of the Canadian Government, libelants were required to remove as a menace to navigation. Such a result, in my opinion, would be contrary to the law as I understand it and in disregard of the facts before the court.

Going first to the policy issued by respondent, it was by its terms "Upon the Hull, Tackle, Apparel, Furniture, Stores, Outfit, Fittings, and also the Engines, Boilers and Machinery, Electric Light Plant, including Dynamo, of the good steamer called the S. S. 'Tashmoo'." It is perfectly clear from this language that the hull of the vessel, her machinery, furniture, equipment and the other things mentioned, were treated as constituting a unit for the purpose of the policy and not as separate items being insured separately.

We have then to start with the situation that the furniture and equipment of the Tashmoo were part and parcel of the vessel, just as much as were the hull, the engines or the life boats; and that it was so treated in respondent's policy. The circumstance that some of the furniture and equipment was removed from the vessel and taken to Detroit for storage did not, in my opinion, change the situation in the slightest. The furniture and equipment in question was on one of the upper decks, above water, and was of a nature particularly susceptible of being damaged or becoming lost during salvage operations. A contract to raise the vessel and deliver her to dry dock had been entered into at the direction of the Hull Underwriters and the purpose of removing the furniture and equipment was to avoid loss and damage to it while salvage operations were in progress. The salvor would have had a lien on this furniture and equipment had he succeeded in raising the vessel just as much as on the hull and the other parts raised, and furthermore, the stipulation of facts recites that "It was agreed by all the parties that said furniture and equipment was to be put back aboard the vessel if and when raised and delivered in dry dock." When it was taken off they were planning on putting it back on board. They were saving it for the ship.

If there had been a room on one of the upper decks in which this furniture and equipment could have been stored and protected during salvage operations, it certainly could not be urged that when so stored it ceased to be a part of the vessel. I think a fair interpretation of the law, ap-

plied to the facts in this case, should not reach a different conclusion because the furniture and equipment in question was removed to Detroit for safekeeping during salvage operations instead of being stored in some room on board the vessel. I hold as a matter of law that the furniture and equipment removed to Detroit for safekeeping continued to belong to and be part and parcel of the Tashmoo and of the unit insured and that in determining whether libelants realized salvage it is necessary to consider the insured property as a whole and to take into account the obligation imposed on libelants as owner of the vessel under the Canadian statute in reference to the removal of wrecks.

Under the Canadian statute the owner of a vessel which has become a wreck and is a menace to navigation is required to remove the wreck at his own expense, and if he fails to do so the Government is authorized to bring about the removal and to charge the expenses to the owner. When the Hull Underwriters discontinued salvage operations and authorized libelants to remove the wreck at their own expense, libelants had received notice from the Canadian Government that the wreck was a menace to navigation and must be removed without further delay. In view of this notice, libelants were required to remove the wreck. This they did at a cost of $12,840. In the meantime, the furniture and equipment which had been removed to Detroit had been sold but this furniture and equipment was, as I have held, part and parcel of the Tashmoo and of the unit insured, and when the proceeds of the sale, amounting to $818.77, and the cost of the removing of the wreck, amounting to $12,840 are considered together, it is obvious that the insured property, the Tashmoo, taken as a whole, instead of producing salvage was a liability to libelants to the extent of $12,021.23. I find that no salvage was realized by libelants, that the sue and labor expense incurred by libelants is not a charge either directly or indirectly against the fund of $818.77 now in the possession of Osborn & Lange, Inc., and that respondent is liable to the libelants for its proportion of the sue and labor expense without right of recourse to the said fund.

It is also my opinion that under the facts in this case, respondent is estopped from claiming any interest in any part of the Tashmoo including the fund realized from the sale of a portion of her furniture and equipment. When Hull Underwriters, following discontinuance of salvage operations, paid libelants a 100% total loss under the policies of insurance, they not only declined to accept the abandonment which had been tendered to them by libelants but went further and expressly disclaimed any interest in the wreck. The purpose of the disclaimer is apparent—they wished to avoid, and by the disclaimer did avoid, any obligation to comply with the order of the Canadian Government for the removal of the wreck and the liability for the attendant expense. This Hull Underwriters had the right to do under well settled principles—Arnould on Marine Insurance, 12th Edition, section 1213,—but as held by the arbitrator "Where a party has the right to accept or reject a transaction, and he refuses to accept some part which is detrimental to him, he is estopped from claiming an interest in that part of the transaction which is beneficial to him. Consequently, it would be inconsistent to permit Hull Underwriters to renounce any interest in the wreck because they might become liable for an expense in excess of the salvage and at the same time permit them to claim the benefit in respect to the salvage arising from the equipment which had been removed and stored at Detroit." The Tashmoo, 1937, A. M.C. 1536, 1544.

Under the circumstances in this case, respondent would be estopped from claiming any interest in said fund even though it represented net salvage, which I have held it did not, and from claiming reimbursement from said fund either directly or indirectly for payment of the sue and labor expense incurred by libelants.

A final decree may be entered in accordance with this opinion awarding libelants the sum of $106.44 from respondent, North British & Mercantile Insurance Company, Ltd., without right of recourse by respondent against said fund, and dismissing the petition filed by respondent under the 56th Rule in Admiralty impleading Osborn & Lange, Inc.