CICONETT v. HOME INS. CO. (two cases).
Nos. 14, 15.

District Court, W. D. Kentucky,
at Louisville.
Sept. 22, 1948.

Leo J. Sandmann, of Louisville, Ky., for libellant.

William Mellor, of Louisville, Ky., and Edward B. Hayes, of Chicago, Ill., for respondent.

SHELBOURNE, District Judge.

Libellant, C. V. Ciconett, on July 3, 1945, filed in Admiralty, separate libels in personam, Numbers 14 and 15, both seeking to recover proceeds of an insurance policy on the Diesel Towboat "Judge Ross", arising out of two sinkings of that vessel.

The first sinking, which is the subject of Libel No. 15, occurred on the 6th day of September 1944, while the "Judge Ross" was in port at Mt. Vernon, Indiana.

The second sinking occurred in the Kentucky River, about three miles above Lock 37, on November 28, 1944, when the Towboat hit a stump or stumps of trees cut off just below the surface of the water at the stage of water existing at the time of the accident.

The second sinking is the subject of Libel No. 14, and it is there sought to recover $4,677.78, expended by libellant under the "Sue and Labor Clause" in the policy and the further sum of $8,500, the amount provided in the policy as the total amount of insurance, subject to a credit of $5,000 paid by respondent to libellant at the time he was attempting to salvage the boat after the second sinking, making a total amount sought to be recovered in Action No. 14 of $8,177.78, exclusive of interest.

The policy of insurance in question was originally issued October 10, 1942, for the period extending from that date until the 10th of October 1943. The policy was renewed by annual certificates extending the insurance through the periods covered by the two sinkings.

In Action No. 15, respondent denied that the facts alleged in the libel were sufficient to state any loss within the coverage of the policy or from any perils insured against, and it was affirmatively alleged that the vessel was unseaworthy, because of an alleged defective valve on a water intake line; that the seams of the vessel were open, especially at the stern; that none of the eight compartments was water tight and also plead that the warranty of libellant, that he would, at all times, have a competent watchman

aboard, awake and on duty, had been violated.

Respondent especially denied that the claims in Action No. 14, from or because of the stranding or grounding of the vessel at her moorings as the result of an alleged fall in the river, were within the coverage of the policy, because expressly excluded.

The answer further alleged that, by rider attached to the policy on March 17, 1943, the assured, under the policy was changed as follows:

"Effective March 11, 1943, it is hereby understood and agreed that the assured under this policy is amended to read as follows: 'C. V. Ciconett, Owner and the Jefferson Boat & Machine Company, Charterer, A.I.M.A.'"

The Jeffersonville Boat & Machine Company was made a party to the libel and promptly disclaimed any interest, alleging that on February 18, 1944, the charter between Ciconett and the Jeffersonville Boat & Machine Company was terminated by mutual consent as of February 9, 1944, after which date the Jeffersonville Boat & Machine Company had no interest.

It was alleged that after March 17, 1943, the policy was void, because of the following provisions contained therein—"The interest of the Assured in this Policy, or any part thereof, or in the property insured, or any part thereof, is not assignable, unless by consent of this Company, manifested in writing, and in case of any transfer or termination of any part of the insurable interest of the Assured in the property aforesaid, either by sale or otherwise, or any charter of said vessel without such consent, this Policy shall from thenceforth be void and of no effect."

The cases were consolidated for trial and tried to the Court.

Martin Wood was Captain in charge of the vessel "Judge Ross" on September 6, 1944. It was moored to the bank at Mt. Vernon, Indiana, at which time its crew constituted Captain Wood, Engineer Breeck, and Melvin Johnson, a deckhand.

Captain Wood discovered, when he went on watch about midnight, that water was entering the hull and he discovered the leak in the stern starboard rake. He started the pumps and attempted to caulk the seams and stop the leak.

The bow of the boat was on the bank and it is the theory of Captain Wood that the river had been lowered by opening the wickets in the dam which caused the stern of the boat to lower and in lowering, created a strain on the valve on the intake water line on the port side, which leaked and admitted water through the valve into the hull of the boat.

The boat sank about 6:00 or 7:00 o'clock a. m. September 7, 1944. Assistance was secured from the Mt. Vernon Fire Department. A towboat, derrick boat and a barge were procured on September 7th, in charge of Otis Bugg. The "Judge Ross" was lifted, pumped out and found to be further damaged by the cable used in lifting it. It was then taken to the Marine Ways at Madison, Indiana, where it was repaired.

There was expended by libellant Ciconett, in raising the boat and repairing it, $2,833.-54. While the boat was on the Marine Ways at Madison, Indiana, the policy of insurance was renewed and on November 28th, the "Judge Ross", while navigating the Kentucky River in bad weather, struck a submerged snag or stump, which punctured its hull and caused the second sinking. In an attempt to raise the "Judge Ross", a diver, Vernon Parker from Metropolis, Illinois, was secured, who directed the efforts to salvage the vessel.

There was expended in this attempt, which was unsuccessful, $4,677.78. The boat was abandoned.

Respondent paid libellant $5,000 under the following agreement—

"It is hereby understood and agreed between the Home Insurance Company and C. V. Ciconett, owner of the Motor Vessel 'Judge Ross', that in tendering a partial payment of $5000.00 and acceptance of the partial payment of $5000.00 by Mr. C. V. Ciconett in connection with the accident of November 28th, 1944, involving the said Motor Vessel 'Judge Ross', no liability or rights of either party are waived by either party.

It is further agreed and understood that the $5,000.00 tendered as a partial pay-

ment is to be considered as a part of the final adjusted sum paid in connection with the claim of Mr. C. V. Ciconett against the Home Insurance Company in connection with the accident of November 28th, 1944, involving the Motor Vessel 'Judge Ross', and that this $5,000.00 is to be deducted from the final payment in settlement of the above identified claim.

Signed George A. Hale

George A. Hale
Marine Surveyor
The Home Insurance Company

Helen T. Schwertzbeck

Notary Public
My Commission expires
Dec. 11, 1946
(Notarial Seal)
    Signed   C. V. Ciconett

Mr. C. V. Ciconett, Owner
Motor Vessel 'Judge Ross.'

Leo J. Sandman
    Notary Public
    (Notarial Seal)"

The amounts expended by Ciconett in both salvage efforts were reasonable and proper and constitute such expense as is contemplated by the terms and coverage of the "Sue and Labor Clause."

The "Judge Ross" was not unseaworthy on the occasion of either sinking. There was no watchman on board and awake on September 6th, 1944, when the leak began, which resulted in the sinking.

Conclusions of Law.

■ I. The Court has jurisdiction of these proceedings and they were properly instituted in Admiralty.

■ II. The "Sue and Labor Clause" constitutes separate coverage in the insurance policy and is supplementary to the contract of the insurance company to pay the damage to the "Judge Ross" and au-

thorizes libellant to recover the "Sue and Labor" expenses incurred by him, in addition to $8,500, the amount provided in the policy as the total insurance. White Star S. S. Company v. North British & Mercantile Insurance Company, D.C., 48 F.Supp. 808; American Merchant Marine Insurance Company of New York v. Liberty Sand & Gravel Company, 3 Cir., 282 F. 514.

■ III. There is not sufficient proof in the record that the sinking of the "Judge Ross" at Mt. Vernon, Indiana, on the night of September 6, 1944, was the result of a peril of the river.

■ IV. The covenant of libellant in the policy of insurance to have a competent watchman aboard, awake and on duty amounted to a warranty, the violation of which avoided liability for the loss occasioned by the sinking of the "Judge Ross" at Mt. Vernon, Indiana on September 6, 1944. Shamrock Towing Company v. American Insurance Co., 2 Cir., 9 F.2d 57; Snyder v. Home Insurance Company, D.C. N.Y., 133 F. 848; Aetna Insurance Company v. Houston Oil & Transport Company, 5 Cir., 49 F.2d 121; Whealton Packing Company v. Aetna Insurance Company, 4 Cir., 185 F. 108, 34 L.R.A.,N.S., 563; Coleman Furniture Corporation v. Home Insurance Company, 4 Cir., 67 F.2d 347.

V. Respondent is not liable in Action No. 15.

VI. Libellant is entitled to recover $4,677.78 on account of the "Sue and Labor" expense incurred in connection with the sinking of the "Judge Ross" in the Kentucky River November 28th, 1944 and the further sum of $8,500, the amount provided for total loss, making a total of $13,177.78, subject to a credit of $5,000 paid to libellant following the second sinking of the vessel.

VII. Respondent's cross libel will be dismissed.