[Civ. No. 14158.   First Dist., Div. One.   Mar. 22, 1950.]

THE PEOPLE, Plaintiff and Respondent, v. GLOBE AND RUTGERS FIRE INSURANCE COMPANY, Appellant; CARL N. SWENSON COMPANY (a Corporation), Defendant and Respondent.

Hauerken & St. Clair for Appellant.

Fred N. Howser, Attorney General, Harold B. Haas and Miriam E. Wolff, Deputy Attorneys General, Victor A. Chargin and Gerald S. Chargin for Respondents.

BRAY, J.—In an action for declaratory relief brought by plaintiff, People of the State of California, against defendants Globe and Rutgers Fire Insurance Company, a corporation,[1] and Carl N. Swenson Company, a corporation,[2] plaintiff recovered judgment against Globe in the sum of $2,051.01. Judgment that plaintiff take nothing was rendered in favor of Swenson. Globe alone appealed.

## FACTS

Although the items are disputed, there is practically no dispute as to the facts. The State of California, through the Board of State Harbor Commissioners, in 1943 entered into a contract with Swenson under which the state, using its own dredge, was to perform certain dredging work for Swenson. The latter had an overall job under contract with the United States Navy. The state was to take out marine insurance on the dredge used, the premiums for which were to be, and were, paid by Swenson. Swenson also agreed to pay for any damage to the dredge not covered by marine insurance. The state obtained the insurance with Globe. Aside from a $1,000 deductible clause, the policy provided that Globe would not pay for repairs attributable to "particular aver-

---

[1] Hereinafter referred to as "Globe."

[2] Hereinafter referred to as "Swenson." It was stipulated that Swenson was a partnership and the pleadings considered amended accordingly.

age" loss, unless the total of such loss exceeded 3 per cent of the value of the insured equipment ($3,000 here, since the dredge was valued at $100,000).

The dredge was injured and the state, after several revisions, presented a claim to Globe for $3,051.01, less the $1,000 deduction. Globe denied the claim on the ground that deducting the items not properly chargeable to particular average, the claim did not come to $3,000. Swenson paid the state the deducted $1,000 (as Swenson was liable for any damage not covered by the insurance), but refused to pay more on the ground that the particular average loss exceeded $3,000, and hence should be paid by Globe. To effect a solution in the nature of interpleader, plaintiff brought an action for declaratory relief. The court found that the particular average loss was $3,051.01, and gave plaintiff judgment against Globe alone for $2,051.01 (as before stated $1,000 was deductible).

The policy issued by Globe was known as the "American Hulls (Pacific) 1938 Deductible Average Form." It contained a provision "D. Warranted to be subject to English law and usage as to liability for and settlement of any and all claims."[3] In April, 1943, an accident occurred, in which the "spuds" of the dredge (large beams which go down to the bucket which does the actual dredging) were broken. The dredge was taken to a pier where the broken spuds were removed and spare spuds installed. The state originally estimated the total cost of repairs, installation and replacement would be about $2,000. A surveyor employed by Globe estimated the cost at $2,500. On December 9, 1943, the state presented a claim to Globe for $2,801.72. (This was under the $3,000 minimum and hence not payable by Globe.) Thereafter the state submitted a revised claim amounting to $3,051.01. Globe refused to pay, claiming that certain items hereafter mentioned were not properly chargeable to particular average. After this suit was brought the state asked and was granted leave to amend its complaint to include an item of $256.78 for "Cost of installing new spuds on dredge." The state did not increase its claim in that amount, but wanted the item considered in determining if the amount attributable to particular average exceeded $3,000. The court found that the particular average loss was in excess of $3,000,

---

[3] At the trial it was stipulated that the English Law and usage might be proved in the same manner as California law would be proved.

exclusive of charges, if any, under the "sue and labor" clause of the policy and of charges for salvage or "any charge other than the reasonable cost of repairs to the dredge."

## QUESTION PRESENTED

Globe challenges the court's findings as to three items only. These will be considered seriatim. As to the first item, Globe's main contention is that it is not chargeable under the particular average clause of the policy as that term is defined under English statutory and case law, but under other provisions. As to the second and third items, Globe contends mainly that they are not allowable at all. If any two of the three items are improper charges, the total particular average loss would be below $3,000 and hence Globe would not be liable for any particular average loss.

The Marine Insurance Act of 1906 (6 Edw. 7, c. 41) provides in part: "64.-(1) A particular average loss is a partial loss of the subject-matter insured, caused by a peril insured against, and which is not a general average loss. (2) Expenses incurred by or on behalf of the assured for the safety or preservation of the subject-matter insured, other than general average and salvage charges, are called particular charges. Particular charges are not included in particular average."

"65.-(2) 'Salvage charges' means the charges recoverable under maritime law by a salvor independently of contract. They do not include the expense of services in the nature of salvage rendered by the assured or his agents, or any person employed for hire by them, for the purpose of averting a peril insured against. Such expenses, where properly incurred, may be recovered as particular charges or as a general average loss, according to the circumstances under which they were incurred."

"78.-(1) Where the policy contains a suing and labouring clause, the engagement thereby entered into is deemed to be supplementary to the contract of insurance, and the assured may recover from the insurer any expenses properly incurred pursuant to the clause, notwithstanding that the insurer may have paid for a total loss, or that the subject-matter may have been warranted free from particular average, either wholly or under a certain percentage. . . . (4) It is the duty of the assured and his agents, in all cases, to take such measures as may be reasonable for the purpose of averting or minimizing a loss."

### 1. Item:—"Dredging for Recovery of Broken Spud— $175."

This amount was included in the original claim. This charge arose as follows: After the spare spuds were put on the dredge, the state was making a new set of spare spuds. Due to the war there was a shortage of materials and it was found that to obtain a new spud point would require perhaps 6 months delay and would cost over $500. The state therefore decided to retrieve the broken spud point and weld it onto the old spud. They dredged for it, succeeded in recovering it, and welded it to the spud. Globe does not dispute that the work was done, that $175 is a reasonable charge, and that Globe is liable to plaintiff for it, but contends that it is not liable under the particular average clause. Globe contends that under the policy it was the duty of the state to take all reasonable measures for the recovery of the thing insured and for its preservation from greater loss and that in recovering the spud point the state was so doing and the cost thereof is a "particular charge" as distinguished from "particular average" and is only recoverable under the "sue and labor" provision of the policy.

As the policy is subject to English law and usage, recourse must be had to English law to decide the issues. (*Canton Ins. Office* v. *Woodside* (C.C.A. 9), 90 F. 301 [33 C.C.A. 63] ; *Boole* v. *Union Marine Ins. Co. Ltd.,* 52 Cal.App. 207 [198 P. 416].) As stated in the extracts from the Marine Insurance Act hereinbefore set forth, "particular average" means a "partial loss of the subject-matter insured" and does not include expenses incurred for its safety or preservation, for salvage or for "general average" (which means a total loss). For practical application particular average means the reasonable cost of repairing the subject matter insured. Particular average does *not* include the cost of measures taken for the recovery of the thing insured or for its preservation from a greater loss. (*Kidston* v. *Empire Insurance Co.* (1866), L.R. 1 C.P. 535, affirmed in (1867) L.R. 2 C.P. 357.) Such matters are recoverable under the sue and labor clause of the policy. (*White Star S. S. Co.* v. *North British & Merc. Ins. Co.,* 48 F.Supp. 808.) Both parties concede the law to be as above set forth. However, plaintiff contends that Item 1 is a part of the reasonable cost of the repairs to the dredge, while defendant contends it is the cost of measures taken for the recovery of the thing insured or for its preservation from

greater loss. Neither side has cited a case where the facts are similar. In *Ciconett* v. *Home Ins. Co.*, 80 F.Supp. 429, it was held that the expenses of an unsuccessful attempt to raise a sunken towboat were recoverable under the sue and labor clause in a marine insurance policy. Defendant reasons that by analogy, the raising of the spud point in our case must necessarily come under that clause. There is a distinction, however, between attempting to raise or raising the thing insured, i.e., the dredge, and the recovery of a small part of the dredge for purposes of repair.

In *Indianapolis Insurance Co.* v. *Mason*, 11 Ind. 171, a boat sank in the river, damaging a load of hay to the extent of less than 20 per cent of its value. The court held that the freight charges in sending the hay, after the accident, to its destination to save the loss of the cargo, could not be added to the amount of damages to the hay to bring the loss over the 20 per cent required to make the insurance company liable. Such a ruling, however, is not authority for the proposition claimed here, that dredging for the point was not an expense of repair but rather one of minimizing loss. Loss of cargo is considerably different from repairs to the ship.

The basic question to be determined here is whether the questioned items are in connection with repairs to the dredge, or are in connection with the preservation of the dredge or expenses incurred in minimizing loss. It is a close question. In a sense, the expenses in Item 1 might be considered as incurred in carrying out the provision of the policy which required the assured to minimize the loss. However, it seems more reasonable to consider them as a part of the cost of repair. Had the state gone to a warehouse or sent east for the necessary spud point there is no question but that the cost of getting such point would have been considered a part of the cost of repair. Here the state recovered the point from the mud. It was not acting in "preservation of the subject-matter insured," the dredge. It was merely repairing a spare part for the dredge. Nor, strictly speaking, was it taking "such measures as may be reasonable for the purpose of averting or minimizing a loss." It was acting to get the repairs done as quickly and as reasonably as possible, and the cost thereof is a part of the cost of repairs.

2. ITEM:—"ENGINEERING AND INSPECTION FEE 5%— $145.29."

■ This item was added to the revised claim. Globe contends that it was unnecessary for the state to provide any engineer-

ing or inspection in connection with the repairs, and that the amount charged is arbitrary and its reasonableness not proved. Globe admits that if the services were necessary they would come within the definition of particular average. The state's Assistant Chief Engineer testified to performing the following services: He surveyed the damage on a visit to pier 43 shortly after the accident, decided that it would be necessary to put in the spare spuds, and got busy on securing bids for a derrick to lift the old spuds out and put the spares in. It was difficult to find an available derrick because of the war work, but he finally made arrangements with Healy-Tibbitts Company. When arrangements had been made for the derrick, he started to arrange about having new spare spuds constructed. In this connection he drew up specifications, had them mimeographed, and mailed them to wooden shipbuilding companies around the bay, asking for bids. He then canvassed the bids, and let a contract to the low bidder. Because of a change on the dredge, he had to send out a modification of the specifications. He spent about four days making all of these arrangements. In addition, the dredge superintendent, another state employee, spent about four days inspecting the work as it progressed. He considered that the 5 per cent fee claimed was reasonable compared to fees usually charged for such work. If the fee had been computed according to the actual working time of the two men, plus a reasonable overhead, it would have exceeded the amount actually claimed, which was set at 5 per cent purposely, to be reasonable. He was not paid anything extra for all of the work involved, but he was forced to postpone all of his regular duties during that time.

*Bull* v. *Insurance Co. of North America* (C.C.A. 2), 218 F. 616 [134 C.C.A. 374], does not apply to the situation here. There, a charge for "Superintending repairs—$82" which included $70 paid for services of the insured's own salaried employee, was disallowed because "it was not shown what his salary was, so there was no way to ascertain what would be the pro rata for the time he was employed on this job (the $70 is an arbitrary charge)." (P. 618.) In our case the engineer detailed at some length the services rendered in preparing specifications, preparation of bids, and inspection of the work, and the time of himself and the superintendent it took. (Globe's own engineer testified that supervision of the work was necessary.) The charge of 5 per cent was not arbitrary;

it was stated to be a sum less than the reasonable charge for the hours involved.

Defendant contends that the Bull case, *supra,* is authority for the proposition that fees for preparation of plans, supervision and inspection cannot be allowed unless all proper repair charges cause the loss to exceed the 3 per cent (here $3,000) minimum of the particular average clause, and cannot be availed of to increase the loss to 3 per cent. The Bull case does not so hold. It does hold that charges for ''Surveys, Protest charges, [and] Adjuster's charges'' (p. 618) can be considered only if the loss otherwise exceeds the 3 per cent (none of these charges are included here). The court in that case allowed the cost of ''Superintending repairs'' to be included in the computation of the 3 per cent loss.

The court found the services necessary and the charge reasonable. Having in mind that the state usually requires specifications for and bids on work to be done for it and requires that such work be under state inspection, there is sufficient evidence to justify the court's finding that the services were necessary in the repairing of the dredge. Also the fact that a detailed charge for the time involved would have resulted in a higher charge justifies the court's finding that the charge was reasonable.

3. ITEM:—''COST OF INSTALLING NEW SPUDS ON DREDGE— $256.78.''

This item was added at the trial by an amendment to the complaint. It was a charge made for the wages of the crew for the 12-hour period that the dredge was laid up for repairs, on the theory that the crew were assisting in the work of installing the new spuds. No claim was made for it, it being used merely for the purpose of showing that the full cost of the repairs to the dredge exceeded $3,000, and hence brought the submitted claims within the particular average provision of the policy. Inasmuch as we find that Items 1 and 2 were properly chargeable to particular average, and adding them to the repair charges which are conceded by Globe to be correct, brings the total amount to $3,051.01, it is unnecessary to consider this item further.

The judgment is affirmed.

Peters, P. J., and Schottky, J. pro tem., concurred.