**M. J. RUDOLPH CORPORATION,**
**Plaintiff,**

v.

**LUMBER MUTUAL FIRE INSURANCE CO., Defendant and Third-Party Plaintiff,**

v.

**LURIA INTERNATIONAL et al.,**
**Third-Party Defendants.**

No. 72 C 445.

United States District Court,
E. D. New York.

March 12, 1974.

Maccaro, Newmark, Lamb, Dowling & Marchisio, New York City, for plaintiff.

Bigham, Englar, Jones & Houston, New York City, for Lumber Mutual Fire Ins. Co., defendant and third-party plaintiff.

Donovan, Donovan, Maloof & Walsh, New York City, for Luria International & Luria Brothers & Co., Inc., third-party defendants.

McHugh, Heckman, Smith & Leonard, New York City, for Red Star Towing & Transp. Co., third-party defendant.

John J. Langan, Brooklyn, N. Y., for Brooklyn Ship Scrapping Co.

BRUCHHAUSEN, District Judge.

The plaintiff, moves for an order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting partial summary judgment against the defendant insurer, Lumber Mutual Fire Insurance Co.

This action was commenced to recover the cost of the removal of a sunken vessel, Cape Borer, owned by the plaintiff, M. J. Rudolph Corporation. The pleadings, affidavits, and memorandums indicate that the plaintiff purchased marine insurance, policy No. MMO 12770 from the defendant, Lumber Mutual Fire Insurance Co., on May 5, 1971. This policy gave "permission to bare boat charter but this insurance not to inure to the benefit of such charterer." Exhibit A, page 3. On November 11, 1971 a letter was mailed by the plaintiff to Luria International confirming an agreement to charter the barge Cape Borer to Luria on a bare boat basis. See Exhibit B. Thereafter, on December 6, 1971, the barge, Cape Borer, while under charter to Luria, and under tow by a Red Star Towing and Transportation Company tug boat, the barge capsized in the Kill Van Kull. It was then towed to Pier 11, Staten Island, New York, where it sank. The owner of the barge then requested Luria to return the barge in good condition, which request was refused. The owner subsequently decided to abandon the sunken barge to the Army Engineers. See Exhibits F-1 and F-2. A letter dated January 4, 1972 from the Economic Development Administration of the City of New York was mailed to M. J. Rudolph Corporation, owner of the sunken barge, directing said owner to remove the sunken vessel as being a menace to navigation and obstructing use of Pier 11. See Exhibit D. A summons of the Criminal Court was issued on January 4, 1972 to M. J. Rudolph charging it with "Obstructing Waterfront Property Sunken Scow." See Exhibits C-1 and C-2. The entire history of the incident was transmitted to the defendant through several letters dated December 22, 1971 through January 25, 1972. See Exhibits H-1 through H-5 inclusive. Finally the barge was removed by Donjon Marine Co., Inc., and a bill of charges of $13,500.00 mailed to the owner of the sunken barge for services rendered. See Exhibit E. The plaintiff then made a demand upon the defendant to recover the cost of removing the sunken barge pursuant to the Wreck Removal Clause of its Protection and Indemnity Policy. See Exhibit A, page 9, subdivision (7). The defendant refused to reimburse the plaintiff for said removal charges, and thereupon suit was commenced against the defendant insurer who impleaded third-party defendants on the theory of subrogation.

The applicable provisions of the marine policy relied upon by the plaintiff are on page 9, clause 7 of Exhibit A which reads:

(7) Liability for cost or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law, provided, however, that:

(a) There shall be deducted from such claim for cost or expenses, the val-

ue of any salvage from or which might have been recovered from the wreck, inuring, or which might have inured, to the benefit of the Assured.

(b) The Assurer shall not be liable for such costs or expenses which would be covered by full insurance under the American Institute Hull Clauses (1/18/70), or claims arising out of hostilities or war-like operations, whether before or after declaration of war.

The defendant, insurer, urges in its defense a clause in Exhibit A, namely on page 11, entitled: Notwithstanding anything to the contrary contained in this policy, no liability attaches to the Assurer:

"For any loss, damage or expense which would be payable under the terms of the American Institute Hull Clauses (1/18/70) form of policy on hull and machinery, etc., if the vessel were fully covered by such insurance sufficient in amount to pay such loss, damage, or expense."

The vessel in question did not have any hull coverage, and the defendant insurer alleges that hull coverage would have reimbursed plaintiff for its removal expenses. It is urged the defendant's policy provided that if such expenses would be covered by the Sue and Labor clause in the American Institute Hull Forms, recovery was excluded under its policy.

The issue to be determined is whether the plaintiff is entitled to recover pursuant to the terms of its contract, or is the Sue and Labor clause applicable.

■■ The plaintiff to prevail must initially prove that the vessel was a wreck. Apparently a sunken vessel damaged to an extent of being rendered unnavigable is a wreck. The vessel here was completely sunk, rendered unnavigable and therefor a wreck.

■ Secondly, there must be a compulsory removal of the wreck. Here, the owner was served with a summons charging it with Obstructing Waterfront Property Sunken Scow, Exhibit C. The affidavit of George R. Daly, in opposition, sworn to the 15th day of February 1974, has attached to it and marked Exhibit 1 and 1A entitled, "Rules and Regulations—Waterfront—." Rule 6 states, in substance, that waterfront property shall not be obstructed by any vessel sinking or sunk. If any such waterfront property is so obstructed, the Commissioner may have it removed and charge the owner for such expense. It follows, therefore, that the owner was under compulsion of law to remove the wreck.

■ The contention of the defendant insurer concerning the hull clauses is erroneous. A hull policy simply insures the hull of the vessel and its gear. As a matter of fact the insuring agreement, Exhibit A, page 4, collision liability expressly excludes in its hull clauses, (a) removal or disposal of obstructions, wrecks on their cargoes under statutory powers or otherwise pursuant to law. Furthermore, a reading of the clause relied upon by the insurer on page 11 expressly reads that this clause applies for damage to a hull, gear and personalty. It does not insure against the cost for removal of a wreck when such is compelled by law.

In White Star S. S. Co. v. North British & Mercantile Ins. Co., D.C., 48 F. Supp. 808, the Court held in part at page 812:

"The law is well settled that the sue and labor clause is a separate insurance and is supplementary to the contract of the underwriter to pay a particular sum in respect to damage sustained by the subject matter of the insurance. Its purpose is to encourage and bind the assured to take steps to prevent a threatened loss for which the underwriter would be liable if it occurred, and when a loss does occur to take steps to diminish the amount of the loss."

In this case as in the one at bar, a governmental statute required the owner to remove a wreck at the owner's cost and expense and if not removed, the government was authorized to remove the

menace to navigation and charge the owner.

The Court has carefully reviewed all of the facts, the policy itself, the applicable law and concludes that the plaintiff is entitled to judgment.

The Court will schedule a date for a hearing on the issue of salvage at the next pre-trial conference, March 18, 1974, at 10 A.M.

The motion is granted. Settle order on two (2) days' notice.